**UNITED STATES of America,**
**Plaintiff,**

v.

**Ruth ERAMDJIAN, Defendant.**

**UNITED STATES of America,**
**Plaintiff,**

v.

**Federico PEREZ, Defendant.**

**UNITED STATES of America,**
**Plaintiff,**

v.

**David Martinez GARCIA, Defendant.**

**UNITED STATES of America,**
**Plaintiff,**

v.

**Manuel Saldana-GARCIA, Defendant.**
**Cr. Nos. 26641, 26644, 26721, 26776.**

United States District Court
S. D. California, S. D.
Oct. 7, 1957.

Laughlin E. Waters, U. S. Atty., John Duncan, Asst. U. S. Atty., Los Angeles, Cal., Wm. Seavey, Asst. U. S. Atty., San Diego, Cal., for plaintiff.

McLaughlin & Casey, Los Angeles, Cal., for Ruth Eramdjian.

Gostin & Katz, San Diego, Cal., for Perez.

Richard Vaughn, San Diego, Cal., for David M. Garcia.

White & Froehlich, San Diego, Cal., for Manuel Garcia.

JAMES M. CARTER, District Judge.

These are cases of first impression and concern Sec. 1407, Title 18, U.S.C.A. enacted July 18, 1956, c. 629, Title II, Sec. 201, 70 Stat. 574. The cases raise questions concerning the interpretation and constitutionality of the statute.[1]

The statute reads,

"§ 1407. *Border crossings—narcotic addicts and violators*

"(a) In order further to give effect to the obligations of the United States pursuant to the Hague convention of 1912, proclaimed as a treaty on March 3, 1915 (38 Stat. 1912), and the limitation convention of 1931, proclaimed as a treaty on July 10, 1933 (48 Stat. 1571), and in order to facilitate more effective control of the international traffic in narcotic drugs, and to prevent the spread of drug addiction, no citizen of the United States who is addicted to or uses narcotic drugs, as defined in section 4731 of the Internal Revenue Code of 1954, as amended (except a person using such narcotic drugs as a result of sick-

---

1. In United States v. Eramdjian, No. 26641, United States v. Perez, No. 26644 and United States v. Garcia, No. 26721 there are pending motions to dismiss the actions, which motions raise similar problems.

In United States v. Garcia, No. 26776 the case has been tried on a stipulated set of facts without a jury. A motion for an acquittal was denied and the defendant found guilty and sentenced. This case concerns an offender who was previously sentenced in a state court for a narcotic violation to a term of less than one year.

ness or accident or injury and to whom such narcotic drug is being furnished, prescribed, or administered in good faith by a duly licensed physician in attendance upon such person, in the course of his professional practice) or who has been convicted of a violation of any of the narcotic or marihuana laws of the United States, or of any State thereof, the penalty for which is imprisonment for more than one year, shall depart from or enter into or attempt to depart from or enter into the United States, unless such person registers, under such rules and regulations as may be prescribed by the Secretary of the Treasury with a customs official, agent, or employee at a point of entry or a border customs station. Unless otherwise prohibited by law or Federal regulation such customs official, agent, or employee shall issue a certificate to any such person departing from the United States; and such person shall, upon returning to the United States, surrender such certificate to the customs official, agent, or employee present at the port of entry or border customs station.

"(b) Whoever violates any of the provisions of this section shall be punished for each such violation by a fine of not more than $1,000 or imprisonment for not less than one nor more than three years, or both. Added July 18, 1956, c. 629, Title II, § 201, 70 Stat. 574."

Section 1407, 18 U.S.C.A., was part of the general revision of the narcotics laws effective July 18, 1956, known as the Narcotic Control Act of 1956.[2]

 The court takes judicial notice of the great numbers of persons inter-cepted upon entering the United States at points of entry and particularly at San Ysidro, within this District, carrying quantities of narcotics and marihuana; of the number of criminal cases in the courts of the United States and in the southern division of the southern district of California, concerning narcotics and marihuana; of the large number of such persons who, prior to arrest, were either addicted to the use of narcotics, or were prior users of marihuana or had been previously convicted in state or federal courts of violation of narcotic or marihuana laws; that such classes of persons are prone to engage in illicit traffic in drugs; that one of the most disruptive factors in the effective control of the traffic in narcotics and marihuana is the smuggling of such substance across the international boundary.

It is a fair and logical conclusion from such facts, that special attention, scrutiny, registration and recording of such classes of persons most prone to smuggle such drugs into the United States, to be made upon the occasion of their leaving the United States and particularly on their return to the United States from Mexico, would materially assist in controlling the illicit traffic in narcotics and marihuana across the international boundary.

### I.

#### The Questions Raised.

The statute provides in part, that "no citizen of the United States who is addicted to or uses narcotic drugs * * " etc. We pause to note that this provision as to the *addict* or *user* applies only to narcotic drugs and not to marihuana. The statute incorporates the definition of narcotic drugs from Sec. 4731, Internal Revenue Code of 1954, 26 U.S.C.A. § 4731. The omission here of marihuana is apparently because marihuana itself

2. Public Law 728, 84th Congress, c. 629, 2nd session. The law contains amendments and new provisions. Chapter 68, Sections 1401 to 1407, inc., 18 U.S.C.A., is entirely new. Congress also amended sections 1182(a), (23) and 1251(a) (11) of Title 8, U.S.C.A.; enacted Sections 176a and 176b of Title 21, U.S.C.A.; amended Sections 174, 184a(a) (b) and 198 of Title 21, U.S.C.A. and amended Sections 4744(a), 4755(b), 4774, 7237, 7607 and 7608 of Title 26 U.S.C.A. (Int. Revenue Act of 1954).

is not a substance causing physical addiction thereto, although psychological addiction may result. However, marihuana has a definite relationship to the narcotic and crime problem.[3]

The statute then excepts the person *using* such narcotic drugs under the care of a physician. The words, *"a person using"* is probably broad enough to cover a person addicted, *who also uses* narcotics under the care of a physician. But that problem is not involved in our cases.

It is contended that the words, "who is addicted to or uses narcotic drugs," are too uncertain to be used in stating a public offense and that therefore the statute violates the Fifth Amendment.

The statute next refers to one "who has been convicted of a violation of any of the narcotic or marihuana laws of the United States, or of any State thereof * * * *". Here marihuana laws have been included and properly so, because of the relationship of marihuana to the drug problem.

The statute proceeds, "the penalty for which is imprisonment for more than one year." One of the cases at bar presents questions of interpretation of the statute, where the actual sentence imposed by a state court was less than one year. Contention is made that "penalty" applies to the punishment actually imposed

and that the word "is" has some controlling significance. We hereafter discuss these problems.

The statute next states, "shall depart from or enter into or attempt to depart from or enter into the United States unless such person registers" with a designated official "at a point of entry or a border customs station."

Here the contention of defendants is that the statute abridges a constitutional right to travel or to leave or enter the United States and therefore violates the Fifth Amendment. We likewise discuss the problem. Finally, the statute requires the surrender of the certificate upon returning to the United States.

These cases also raise a question as to whether or not the requirement of registration violates the provisions of the Fifth Amendment in requiring a party to be a witness against himself, allegedly requiring him to confess a crime, and the related question as to whether the information supplied would constitute a "link in the chain" leading to incrimination.

II.

The Constitutional Basis for Congressional Action—the Treaty References and Foreign Commerce.

■ Although a State has generally power to enact criminal statutes under the broad authority of its police power,

---

**3.** "The great danger of this drug (marihuana) is the release of inhibitions accompanied by a definite loss of moral sense. The subject is dangerous to handle, has no fear, and can be placed under restraint only with great difficulty. Crimes committed while under the influence of this drug are apt to be of a particularly offensive type, characterized by a complete lack of moral restraint.

"While under the influence of marihuana, juveniles may be more easily introduced to the use of heroin. *The typical juvenile addict that comes to the attention of the police in this area has followed a familiar pattern—alcohol, marihuana or barbiturates (sometimes both), then heroin.* [Emphasis supplied.]

"Marihuana is known to be psychologically addicting, but some success is found in effecting a cure if treatment precedes definite mental deterioration." A Study

of Juvenile Drug Addiction in Los Angeles, Los Angeles Police Department, 1952, pp. 15–16.

"Marihuana attacks the central nervous system, greatly affects the mentality and the five physical senses * * * Inhibitions are lost to a greater extent than under the influence of alcohol. A person under the influence of marihuana may believe himself so small that he is afraid to step off the curbstone into the street, or he may feel of enormous size and of superhuman strength. While so intoxicated, because of his high susceptibility to suggestion, he may commit criminal acts and have exaggerated feelings of persecution, unfriendliness and animosity." "Effects of Marihuana," State of California, Department of Justice, Bureau of Narcotic Enforcement, 1953–54, p. 1.

no similar authority exists under the United States Constitution. The constitutional authority for enactment of penal statutes in the Federal system must be found in the constitution itself.

Generally and without limiting the classifications, the types of crimes within Congressional authority are as follows:

1. Crimes penalizing an interference with a function of the Federal government art. I, Sec. 8, Par. 18, United States Constitution, "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers * * * " etc., for example, a false claim to a government agency or conspiracy to defraud the government;

2. Crimes involving subject matters expressly stated in the Constitution as within the power of Congress, such as to the power to set up a monetary system (crimes against the currency), power to set up and maintain the postal system (theft of mail, robbery of Post Offices, etc.), art. I, Sec. 8, Par. 18, U.S.Constitution. This second category overlaps the first category and likewise includes acts interfering with essential government functions;

3. Crimes involving interstate or foreign commerce, art. I. Sec. 8, Par. 3;

4. Crimes arising on government land, art. I, Sec. 8, Par. 17;

5. Crimes arising under the taxing power, art. I, Sec. 8, Par. 1;

6. Crimes of piracy and felonies on the high seas, art. I, Sec. 8, Par. 10;

7. Crimes against the law of nations, art. I, Sec. 8, Par. 10;

■ It is not ordinarily necessary for the Congress to set forth in the statute the constitutional authority it invokes to justify the statute.

Here the statute first makes reference to the Hague convention in 1912, proclaimed as a treaty on March 3, 1915, 38 Stat. 1912, and the limitation convention of 1931 proclaimed as a treaty on July 10, 1933 (48 Stat. 1543, 1571). The treaty of 1912 made particular reference to opium, morphine and cocaine. Neither treaty mentions marihuana.

The treaty reference is not an essential part of the statute and we believe the statute, if otherwise constitutional, would be equally valid if it began with the words, "no citizen of the United States * * * " and did not contain the preamble reference to treaties. In any event the preamble to the statute states a three-fold purpose, (1) "to give effect to the (treaty) obligations of the United States," and (2) "to facilitate more effective control of the international traffic in narcotic drugs" and (3) "to prevent the spread of drug addiction."

Missouri v. Holland, 1920, 252 U.S. 416, 432, 40 S.Ct. 382, 383, 64 L.Ed. 641, held that where a treaty was valid "there can be no dispute about the validity of the statute under Article 1, Section 8, as a necessary and proper means to execute the powers of the Government."

There has been no attack here on the treaties and we doubt if one can be successfully made. Although no mention is made of marihuana in the treaties, marihuana is definitely related to the drug problem and the evils that flow from the use of drugs.[4] A statute which has its impact on both the drugs named in the treaty and on marihuana, related as it is to the drug addiction problem, would seem to us a valid statute to implement a valid treaty.

■ Regardless of the treaty basis, the statute rests firmly on the power of Congress to regulate foreign commerce. The language concerning the "more effective control of the international traffic in narcotic drugs" is a direct reference to the power of Congress to legislate on such matters.

■ Congress may "regulate commerce in all its branches and it is settled that this power extends to every species of commercial intercourse and may be

4. See note [3].

exercised upon persons as well as property," Lin Sing v. Washburn, 1862, 20 Cal. 534, aptly summarizing the decision in the Passenger Cases (Smith v. Turner) 1849, 7 How. 282, 48 U.S. 283, 12 L.Ed. 702, which overruled City of New York v. Miln, 1837, 11 Pet. 102, 36 U.S. 102, 9 L.Ed. 648. Accord, Precision Castings Co. v. Boland, D.C.N.Y.1936, 13 F.Supp. 877, 886, affirmed, 2 Cir., 85 F. 2d 15.

The Mann Act, 18 U.S.C.A. § 2421 et seq., forbidding the transportation of women for commercial purpose in interstate or foreign commerce is within the power of Congress, Cleveland v. United States, 10 Cir., 1945, 146 F.2d 730 (reversed on other grounds) Chatwin v. U. S., 326 U.S. 455, 66 S.Ct. 233, 90 L. Ed. 198, affirmed 329 U.S. 12, 67 S.Ct. 13, 91 L.Ed. 12, rehearing denied 329 U.S. 830, 831, 67 S.Ct. 361, 91 L.Ed. 704. The Dyer Act, 18 U.S.C.A. § 2311 et seq., the Federal Fire Arms Act, 15 U.S.C.A. § 901 et seq., and the Anti-Kidnapping Act, 18 U.S.C.A. §§ 10, 1201, 1202, are further examples of the proper legislative exercise of this power by Congress.

"Where federal legislation has rested on other congressional powers, such as the Necessary and Proper Clause or the *Commerce Clause*, this Court has generally sustained the statutes, despite their effect on matters ordinarily considered state concern. When federal power to regulate is found, its exercise is a matter for Congress." United States v. Kahriger, 1953, 345 U.S. 22, at page 29, 73 S.Ct. 510, at page 514, 97 L.Ed. 754. [Emphasis supplied]. The Supreme Court footnoted the quotation above by note 6, where they cite various cases showing that statutes based on the *commerce power* were generally held valid, though statutes based on the *tax power* might result in a holding of unconstitutionality. The cases cited concern interstate commerce, but we see no reason why there should be a different rule as to foreign commerce.

### III.

### The Crimes Set Forth in the Statute and the Indictments.

The statute in part reads in (a) " * * * No citizen of the United States * * * " specifying the prohibited classes, " * * * shall depart from or enter into * * * the United States * * * *unless such person registers, under such rules and regulations as may be prescribed by the Secretary of the Treasury* with a customs official, agent, or employee at a point of entry or a border customs station." Such official, etc., "shall issue a certificate to any such person departing from the United States; and such person shall, upon returning to the United States, surrender such certificate" to the official, etc.

"(b) Whoever violates *any of the provisions* of this section shall be punished * * * ". [Emphasis supplied.]

The Acting Secretary of the Treasury under date of January 9, 1957, adopted the rules and regulations referred to in the statute. They were filed as F.R.Doc. 57–338 on January 16, 1957 and appear in Vol. 22, No. 12, p. 348 of the Federal Register. The form, type and manner of registration is not spelled out in the statute. But Congress might properly delegate the making of rules and regulations covering such regulations, to the Secretary of the Treasury. Standard Oil Co. of California v. Johnson, 1942, 316 U.S. 481, 484, 62 S.Ct. 1168, 86 L.Ed. 1611.

Rules and regulations properly promulgated and within the authority of the rule making authority, have the form and effect of law. Standard Oil Co. of California v. Johnson, supra; Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787.

The regulations (22 Fed.Reg. 348) provide that the person required to register "shall register his departure from the United States with the collector of customs at the port of departure on Customs Form 3231, Registration Cer-

tificate of Narcotic User or Violator.[5] The original shall be given to the registrant who, upon his return to the United States shall register with the collector of customs at the point of arrival by signing before a customs officer and in the space provided for this purpose on the original and by surrendering the completed form to the customs official."[6]

The regulations above are definite, and describe plainly the *how, when* and *where* of the registration required. They are in accord with the statute which requires registration upon *departing* from and *entering* the United States. The regulations take into account and jibe with the statutory requirement of the *issuance* of a certificate to a person departing from, and the *surrender* of such certificate by such person, upon returning to the United States.

■ The regulations are in accord with the legislative intent of Congress as shown in its reports, where Congress interprets the law as requiring specified classes of persons "to register and obtain a certificate * * * when leaving the United States and to surrender the certificate upon re-entry.[7] We conclude the regulations are valid and together with the statute clearly define the crimes thus created by Congress.

Several crimes, with respect to persons in the specified classes, are included in the statute. Sec. 1407(b), Title 18 U.S.C.A., provides a penalty for one who violates "*any* of the provisions of this section." Such crimes are:

(1) to depart from the United States without registering,

(2) to attempt to depart from the United States without registering,

(3) to enter the United States without registering,

(4) to enter the United States without surrendering the certificate,

(5) to attempt to enter the United States without registering,

(6) to attempt to enter the United States without surrendering the certificate.

We think under (1) and (2) above, the substance of the crime is the failure to register. The obtaining of the certificate is not an element of this crime. Obtaining the certificate is for the registrant's benefit to facilitate his lawful return to the United States.

In the breakdown above (3) and (4), the failure to register upon returning to the United States and the failure to surrender the certificate are separate offenses. But the two acts are so closely related that charging them in one count, in the absence of a special attack on the indictment for duplicity, would not be improper. The same would be true of (5) and (6).

5. Form 3231, according to the instructions thereon, is prepared in duplicate if the registrant is to return thru the same point of entry; and in triplicate if he states he will return through another point of entry. In such latter event, one copy is forwarded to the second point of entry. In every case the original is given to the registrant and a signed duplicate kept at the point of departure.

6. The regulations provide further that as to a citizen who has departed from the United States prior to July 19, 1956 (the effective date of the statute), he shall *register his return* to the United States with the collector of customs at the port of arrival on customs form 3231. No question on this part of the regulation is involved in the cases at bar.

7. *Legislative History*
"(g) Section 1407—Border crossings—narcotic addicts and violators.—
"Section 101 of the Senate amendment added a new section to title 18 of the United States Code to require narcotic addicts, other users of illicit drugs, and convicted narcotic violators, to register and obtain a certificate at points of departure when leaving the United States, and to surrender the certificate upon re-entry. Failure to comply was made punishable by a fine of not more than $1,000, by imprisonment for not less than 1 year and not more than 3 years, or by both. The House bill contained no comparable provision." Sen. Report 1997, House Report 2388, Conference Report 2546, on the Narcotic Control Act of 1956, U.S. Code Congressional Administrative News, 1956, Vol. 2, page 3320.

In the cases at bar the indictments are identical except that in Nos. 26641 and 26644, it is alleged that the defendant "being a citizen of the United States who *was then addicted to and used narcotic drugs* * * * did return to and enter into the United States * * * *without registering* with a customs officer" etc., "at said point of entry * * and *without surrendering the certificate* * * *";[8] while in Nos. 26721 and 26776 the indictment alleges that on a certain date the defendant "a citizen of the United States, was convicted of a violation of a narcotic law of the State of California, to-wit: Sec. 11500 of the California Health and Safety Code, possession of marihuana, *the penalty for which offense is imprisonment for* more than one year * * * *". The remainder of the indictment is in language similar to the first two cases.

Thus, each indictment charges "return to and enter into the United States * * * without registering * * * and without surrendering the certificate." When read without considering the regulations describing the registration, it might appear that the "registering" referred to registration when leaving the United States. But when the regulation is taken into account it is clear that the "registering" referred to is that required on returning to the United States.[9]

To prove its case as alleged, the government must prove, (a) *citizenship*. When this is done by birth certificate or naturalization certificate, there is likewise proved the *presence* of the defendant in the United States at the date of the birth or naturalization certificate, (b) *"return to and enter* into the United States" is alleged. Proof in other cases of this type tried in this court has consisted of evidence that the defendant was observed crossing the international border at San Ysidro (So. of San Diego) from Mexico into the United States. This, coupled with the proof of citizenship and the *presence* of the defendant in the United States on the earlier date results in the inescapable inference that the defendant left the United States and did now "return to and enter into the United States."

We are not concerned with the date of leaving. Since the statute sets forth several crimes and makes the *entry* of such prohibited class of persons into the United States without registering, a crime, there is no burden on the government in such a case, to prove the date of leaving or the failure of the defendant to register when leaving. This is a separate crime not charged herein. (c) To prove there was *no registration* at the time of the returning and entering the United States, the government in the cases previously tried, have used the customs inspector to testify there was

8. The indictment in No. 26641 reads:
"The Grand Jury charges:
"On or about April 20, 1957, defendant Ruth Eramdjian, being a citizen of the United States who was then addicted to and used narcotic drugs, as defined by Section 4731 of the Internal Revenue Code of 1954, did return to and enter into the United States at the Port of San Ysidro, San Diego County, within the Southern Division of the Southern District of California, without registering with a customs official, agent or employee at said point of entry as required by law, and without surrendering the certificate, required by law to be obtained by said defendant upon leaving the United States, to said customs official, agent or employee."

9. It should be noted that none of these

cases allege a *departure from the United States without registering*. Such a charge would present difficulties of proof, since (1) the defendant would only be apprehended and the case actually be available for prosecution on the defendant's *return*, and (2) the government to prove failure to register on departure would either have to search the records of all points of departure, to prove failure to register or rely on a theory that since this involved proving a negative, the burden was on the defendant to produce his certificate of registration. We have not researched this point. Suffice it to say the government in all cases in this district have charged on the failure to register on the return to the United States and the failure to surrender the certificate.

no registration and no surrendering of the certificate. (d) In the *violation* cases, certified copies of the prior convictions have been introduced in evidence. (e) *In the addiction and user* cases proof of the defendant's admissions [10] on returning to and entering the United States and a description by a customs witness as to what he observed, e. g. needle marks on arms or the physical signs and appearance of the person then under the influence of narcotics, have been offered in evidence.[11]

It is thus apparent that the alleged incriminating registration certificate (discussed in point V) is not used against the defendant. He is prosecuted because he did *not* register and *did not* surrender the certificate.

### IV.

Wilfulness is Not a Necessary Ingredient of the Statute Nor of Indictments Based Thereon.

The statute has been carefully and artfully drawn. It does not contain the word *wilful* as characterizing the violation.

 It is necessary to distinguish "between the elements of an offense, where the statute simply denounces the doing of an act as criminal, and where it denounces as criminal only its willful doing. In the first class of cases, especially in those offenses mala prohibita, the law imputes the intent. Landen v. United States, 6 Cir., 299 F. 75; United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604. * * *" Hargrove v. United States, 5 Cir., 1933, 67 F.2d 820, 823, 90 A.L.R. 1276.

"* * * A corrupt purpose, a wicked intent to do evil, is indispensable to a conviction of a crime which is morally wrong. But no evil intent is essential to an offense which is a mere malum pro-

hibitum. A simple purpose to do the act forbidden, in violation of the statute, is the only criminal intent requisite to a conviction of a statutory offense, which is not malum in se. Bishop on Statutory Crimes, § 596b; 1 Bishop's Crim. Law (8th Ed.) §§ 343, 345, par. 4 * * *," Armour Packing Co. v. United States, 8 Cir., 1907, 153 F. 1, 23, 14 L.R.A.,N.S., 400, affirmed 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681.

Morissette v. United States, 1952, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, contains an excellent analysis and discussion of the instances where the content of the word wilful is necessary. But the cases at bar are cases which do not "fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals," Morissette, 342 U.S. at page 255, 72 S.Ct. at page 246. Violations of this statute "result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize," (Morissette, 342 U.S. at page 256, 72 S.Ct. at page 246).

"* * * It was not until recently that the Court took occasion more explicitly to relate abandonment of the ingredient of intent, not merely with considerations of expediency in obtaining convictions, nor with the malum prohibitum classification of the crime, but with the peculiar nature and quality of the offense. We referred to '* * * a now familiar type of legislation whereby penalties serve as effective means of regulation', and continued, 'such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsi-

---

10. Although the *corpus delicti* problem has not yet been raised in the *addiction* and user cases, and is not involved in these cases, if and when raised it must be determined in the light of Opper v. United States, 1954, 348 U.S. 84, 75 S. Ct. 158, 99 L.Ed. 101.

11. None of the indictments returned so far in this district have charged that the defendant was only a user of narcotics. All have charged that the defendant was addicted to and used narcotics.

ble relation to a public danger.' But we warned: 'Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting.' United States v. Dotterweich, 320 U.S. 277, 280–281, 284, 64 S.Ct. 134, 136, 88 L.Ed. 48. * * * " (Morissette, 342 U.S. at page 260, 72 S.Ct. at page 248).

"We attempt no closed definition, for the law on the subject is neither settled nor static. The conclusion reached in the Balint and Behrman cases has our approval and adherence for the circumstances to which it was there applied." (Morissette, 342 U.S. at page 260, 72 S.Ct. at page 248). Certiorari in the Morissette case was based on the decisions of United States v. Behrman, 1922, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 and United States v. Balint, 1922, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604. Both involved the Harrison Narcotic Act, Act of Dec. 17, 1914, c. 1, 38 Stat. 785. This statute with its amendments [12] is the ancestor of §§ 4701, 4702, 4703, 4704, 4705, 4713, 4721, 4722, 4724 and 4725, Title 26 U.S.C.A. (Internal Revenue Code of 1954).

Balint held that scienter was not a necessary element of the offense (258 U.S. at pages 253–254, 42 S.Ct. 302, 303) and in Behrman, 258 U.S. at page 288, 42 S.Ct. 304, the Supreme Court said, "If the offense be a statutory one, and intent or knowledge is not made an element of it, the indictment need not charge such knowledge or intent."

On the authority of Balint, Behrman and Morissette, supra, we hold that Sec. 1407, 18 U.S.C.A., sets forth a crime *mala prohibita* and is not invalid for failure to include the element of wilfulness; and that the indictments herein, for the same reason, are not subject to dismissal for failure to state a public offense.

### V.

### The Constitutional Attack.

Various attacks are made on the statute, varying with the particular case. The gravamen of the attack centers on the constitutionality of the statute.

Sections 2281–2284 (c. 155) of Title 28 U.S.C.A. are not applicable and a three judge court is not required where only the construction of a federal statute is involved and no injunction against its enforcement is sought.

### 1. *Alleged Incrimination.*

It is contended that the statute requires an admission or confession of a crime and since no immunity clause is included, the statute is unconstitutional in view of the Fifth Amendment. Although there is no federal crime penalizing mere *possession* of narcotics, proof of possession of narcotics (§ 174, U.S.C.A. Title 21), or marihuana (§ 176a, U.S.C.A. Title 21), unexplained, is sufficient evidence upon which to predicate a conviction under the foregoing statutes. It is argued that if a person registered under Sec. 1407, U.S.C.A. Title 18, and stated he was a user or addicted to the use of narcotics, he would be forthwith subject to a prosecution. The contention is not correct.

(1) There is no requirement that the registrant state he has or has had *possession* of narcotics. Such an inference might be possible but is not a necessary or compelled inference. A person could be a user or an addict and never have handled or possessed narcotics. Others might have given the injections.

(2) No statement is required from the registrant as to *when* or *where* he used or was addicted. He may have used in Mexico or Canada, and he may be addicted from such use. His prior use may have been at a time beyond the statute of limitations. Standing alone, his statement he was a user or addicted would enable no prosecutor to secure an indictment since a necessary element of a narcotics crime is an allegation that the offense occurred within the territorial jurisdiction of the court.

(3) The privilege against self incrimination does not extend to matters.

12. See Historical note to Sec. 4701, Title 26 U.S.C.A., and other sections named.

which might tend to incriminate a witness under the laws of another jurisdiction. United States v. Murdock, 1931, 284 U.S. 141, 149, 52 S.Ct. 63, 76 L.Ed. 210; Feldman v. United States, 1944, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408.

■ The case of Adams v. Maryland, 1954, 347 U.S. 179, 74 S.Ct. 442, 444, 98 L.Ed. 608, is not opposed to the above cases but rested on the breadth of the words, "in any court" used in the immunity statute involved. The fact that possession of narcotics would be a crime under state law (e.g. Sec. 11500, California Health and Safety Code) does not permit the invocation of the Fifth Amendment against the registration required in 18 U.S.C.A. § 1407.

2. *Exceptions to the operation of the Fifth Amendment.*

Another principle of law is here worthy of consideration. Various types of evidence supplied by a defendant, have been held to be exceptions to or without the scope of the Fifth Amendment.

In discussing the constitutional privilege under that Amendment, the Supreme Court held;— " * * * The privilege which exists as to private papers cannot be maintained in relation to 'records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established.' " Shapiro v. United States, 1948, 335 U.S. 1, at page 33, 68 S.Ct. 1375, 1392, 92 L.Ed. 1787; Davis v. United States, 1946, 328 U.S. 582, 589–590, 66 S.Ct. 1256, 90 L.Ed. 1453; Wilson v. United States, 1911, 221 U.S. 361, 380, 31 S.Ct. 538, 55 L.Ed. 771; Boyd v. United States, 1886, 116 U.S. 616, 624, 6 S.Ct. 524, 29 L.Ed. 746; Stillman v. United States, 9 Cir., 1949, 177 F.2d 607, 617.

■ Likewise, where statutes require the making of reports, applications, declarations or the filing of a registration, such material in the hands of a government agency is admissible in a

criminal prosecution against the maker, and their use does not violate the Fifth Amendment.

Such statutes bring into play the underlying principle of Warszower v. United States, 1941, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876, since the statements or declarations required to be made, occurred before the commission of the offense which was later charged.

There are numerous categories in the application of the rule that the use of reports, statements or applications, made prior to the commission of an offense, does not violate the Fifth Amendment; viz. (1) Selective Service and Draft cases; (2) Income tax prosecutions; (3) Prosecutions under Rent Control; (4) Prosecutions under the Price Control Act; (5) Customs cases; (6) Nationality offenses.

(1) *Selective Service and Draft Cases*

"Congress, of course, has the power to seek information through registration or otherwise in peace time * * *" in connection with raising an army, Richter v. United States, 9 Cir., 1950, 181 F.2d 591, 593.

At the trial for violation of the Selective Service Act, 50 U.S.C.A. Appendix, § 451 et seq., the registration documents and questionnaire made by the defendant under compulsion of the statute, prior to the commission of the offense are admissible, Hopper v. United States, 9 Cir. en banc, 1944, 142 F.2d 181, 186; Tudor v. United States, 9 Cir., 1944, 142 F.2d 206, 207. The entire Selective Service file is admissible upon the trial of a registrant for refusal to submit to induction. See Miller v. United States, 6 Cir., 1949, 173 F.2d 922. In a Selective Service case admissions as to a defendant's age made prior to the commission of the offense, are admissible, Zuziak v. United States, 9 Cir., 1941, 119 F.2d 140.

A statement of date of birth made upon registering as an alien, required by law, was admissible in a Selective Service case, Fogel v. United States, 5 Cir., 1947, 162 F.2d 54, 55. The draft act provisions in World War I requiring the

exhibition of draft cards, issued following registration, does not violate the Fifth Amendment. United States **v.** Olson, D.C.Wash. 1917, 253 F. 233.

(2) *Income tax prosecutions*

In United States v. Sullivan, 1927, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, a prosecution under the income tax laws, viz. the Revenue Act of 1921, 42 Stat. 227, a conviction was sustained where the defendant refused to file a return. It is clearly the law that in an income tax prosecution, tax returns for the years in question although made under statutory compulsion, are admissible at the trial. Moreover, the cases hold that tax returns of other years are admissible in connection with the prosecution for the years in question. Mitchell v. United States, 8 Cir., 1954, 208 F.2d 854, 857; Vloutis v. United States, 5 Cir., 1955, 219 F.2d 782, 789.

(3) *Rent Control cases*

Under the Emergency Price Control Act of 1942, 56 Stats. 23, 50 U.S.C.A. Appendix, § 901 et seq., and regulations adopted pursuant to statute, the landlord was required to file with a government agency the rents in effect on certain dates. These were subsequently used and admissible against the landlord in a prosecution for violating the Act.

(4) *Price Control cases*

Under the Emergency Price Control Act of 1942 (supra) the prices in effect at certain times were required to be filed with a government agency. Subsequently these filings were admissible against the maker thereof in a prosecution for violating the ceilings fixed. Morgan v. United States, 5 Cir., 1945, 149 F.2d 185, 186, 187. The use of a defendant's own records to prove failure to keep proper data as required by law did not infringe the Fifth Amendment. Coleman v. United States, 6 Cir., 1946, 153 F.2d 400, 403.

(5) *Customs cases*

The Fifth Amendment is no defense in a prosecution for the violation of customs laws. United States v. Dalton, D.C. Wash.1923, 286 F. 756.

(6) *Nationality and Passport cases*

In various of the Nationality cases a statement was required by law from the party as to his birth, citizenship or other relevant matter. In a subsequent prosecution for violation of the Nationality laws, such statements were admitted against the maker thereof, despite the provisions of the Fifth Amendment.

In Warszower, 1941, 312 U.S. 342, 61 S.Ct. 603, a prosecution for using a passport secured by false statements, the government for proof of alienage relied on a ship's manifest containing statements made by the defendant as to his birth, his draft registration record and draft questionnaire and an application for a re-entry permit preparatory to foreign travel. Certainly the draft documents and the re-entry application were made pursuant to statutes requiring the same and probably the same was true of the information supplied for the ship's manifest.

These cases and situations are, persuasive in the solution of our problem. Under Sec. 1407, Title 18 U.S.C.A., the person using or addicted to narcotics or the convicted violator of state or United States narcotic or marihuana laws is required to register. His registration is not compulsory, in that he may choose not to leave the United States and therefore not to register.

Like the filing of income tax returns, the registration is "not made in compliance with a subpoena or court order * * * or under threat of prosecution or induced by any form of compulsion save that reflected in the duty" to comply with the law, Stillman v. United States, 9 Cir., 1949, 177 F.2d 607, 618. "No criminal case is pending, and the immediate purpose is information and not prosecution." Shushan v. United States, 5 Cir., 1941, 117 F.2d 110, 117.

Although Lewis v. United States, 1955, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475, involving the tax on wagering, 26 U.S.C.A. (I.R.C.1939) § 3290 et seq., and a required registration, construed the statute as operating prospectively, nevertheless some of the language in the

case is of interest. "The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment. \* \* \* The only compulsion under the Act is that requiring the decision which would-be gamblers must make at the threshold. \* \* \*'" (348 U.S. at page 422, **75** S.Ct. at page 418).

At the time of registration the registrant has committed no crime and no crime is revealed by his registration. Our case differs from most of the situations set forth above, in that if he registers, no prosecution is predicated thereon. In fact, it can be argued that the classes of cases referred to above constitute a broader exception to the Fifth Amendment than does Sec. 1407, Title 18 U.S.C.A., in that in such cases and situations the registration or statements made can thereafter be an integral part of a prosecution for a crime. Here the situation is the reverse. If registration is made no prosecution can be based upon the honest registration. If the registration is false, that is if a person falsely claimed he was a user or addicted to the use of narcotics, or was a convicted violator of narcotic laws (an almost impossible situation) then a prosecution might result for false statement to a government agency.

3. *A later claim of privilege*

Where the defendant fails to register, we do not believe he can later, at time of trial, claim any privilege against self incrimination. The cases involving income tax returns indicate that any claim of privilege should have been made in connection with filing the return. United States v. Sullivan, 1927, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037; Stillman v. United States, 9 Cir., 1949, 177 F.2d 607, 618, Shushan v. United States, 5 Cir., 1941, 117 F.2d 110, 117–118.

In United States v. Kahriger, 1953, 345 U.S. 22, at page 32, 73 S.Ct. 510, 515, 97 L.Ed. 754, wherein the court sustained the constitutionality of a tax on wagering, 26 U.S.C.A. (I.R.C.1939) § 3290 et seq., the court said:

"Since the appellee failed to register for the wagering tax, it is difficult to see how he can now claim the privilege even assuming that the disclosure of violations of law is called for."[13]

We likewise fail to see how the defendant who refuses or fails to register can later claim the privilege against self incrimination, even assuming that the registration would show a violation of law, which we do not believe it does.

4. *"Link in the chain" argument.*

Defendants contend that the registration provides a "link in the chain" of evidence that might be used to convict and thus falls within the rule of Hoffman v. United States, 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; Blau v. United States, 1950, 340 U.S. 159, 161, 71 S.Ct. 223, 95 L.Ed. 170, and similar cases.

One notes immediately that such cases involve *compulsory* testimony before a court or grand jury and hence the witness had *no choice.* Here the person involved may choose to register and leave the United States or not register and remain. Although this statement immediately distinguishes the "link in the chain" cases, it leads into the next question, i. e. the impact of the statute on the constitutional right to travel.

If this possible interference with the right to travel is a proper realm for congressional action and does not violate constitutional provisions pertaining thereto, we have no doubt that the element of choice available to the prospective registrant under Sec. 1407, Title 18 U.S.C.A., makes inapplicable Hoffman and Blau (supra) and similar cases.

5. *Right to travel*

13. True, the court in Kahriger subsequently pointed out that, "assuming that respondent can raise the self-incrimination issue, that privilege has relation only to past acts, not to future acts that may or may not be committed." (345 U.S. at page 32, 73 S.Ct. at page 515).

Williams v. Fears, 1900, 179 U.S. 270, 21 S.Ct. 128, 129, 45 L.Ed. 186, involved the Fourteenth Amendment and the power of a state to tax an "emigrant agent" and whether the tax burdened interstate commerce. The tax was held proper and the court said:

"* * * Undoubtedly the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any state is a right secured by the 14th Amendment and by other provisions of the Constitution. * * *"

In the cases at bar the statute must comply with the provisions of the constitution applicable to the federal government. This is the Fifth Amendment,— "No person shall be * * * deprived of * * * liberty * * * without due process of law," Shachtman v. Dulles, 1955, 96 U.S.App.D.C. 287, 225 F.2d 938, 940, 941, "What is arbitrary, however, in the sense of constituting a denial of due process, depends upon circumstances," Shachtman, supra, 225 F. 2d 941, citing cases. We do not find the Shachtman case otherwise helpful. Nor does Kraus v. Dulles, 1956, 98 U.S.App. D.C. 343, 235 F.2d 840, another passport case, teach anything except that an administrative denial of a passport must be reasonable and not arbitrary and that the denial is subject to review.

In Briehl v. Dulles, D.C.Cir., En Banc 248 F.2d 561, five of the eight judges found no infirmity in a statutory and regulatory system of passport control requiring the filing of a non-communist affidavit by the applicant.

■ The right to travel is not an absolute one, free of all restraint or regulation. The right of free speech, in comparison, must yield to the delicate balancing of interests, public and private. Schenck v. United States, 1919, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470; Gitlow v. New York, 1925, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138; Dennis v.

United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137.

There are of course the familiar restraints on travel, such as the Dyer Act and the Mann Act where a certain set of facts has been found by Congress to be a federal crime within the power of Congress to regulate interstate and foreign commerce. In fact all regulations of interstate or foreign commerce involving *persons* are restraints on the right of free travel.

Such statutes are comparable to the statutes here, in that Congress has here determined that crossing the border by a particular class of persons is illegal without prior registration.

Chapter 18, Title 15 U.S.C.A. concerning the transportation of firearms in interstate and foreign commerce is a restraint on travel in certain situations. Sec. 902(e), Title 15 U.S.C.A., makes it unlawful for a person under indictment, or who has been convicted of a crime of violence or is a fugitive, to transport across a border any firearm.

Although the constitution, in Amendment II guaranteed the right of the people to "keep and bear Arms" the firearms statute was held not a violation of that amendment. Cases v. United States, 1 Cir., 1942, 131 F.2d 916, certiorari denied Cases Velazquez v. U. S., 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718, rehearing denied 324 U.S. 889, 65 S.Ct. 1010, 89 L.Ed. 1437.

■ We believe it within the power of Congress and not a violation of due process under the Fifth Amendment to require that citizens of the United States who are narcotic users or addicts, or who have been convicted of narcotic and marihuana laws, register before crossing the international boundary.

6. *Legality of the classifications*

■ Although the "equal protection of the laws" clause is contained in the Fourteenth Amendment and is thus a limitation on state action, the Fifth Amendment restrains only such discriminatory legislation by Congress as amounts to a denial of due process. The

Fifth Amendment is thus operative against the United States government, Hirabayashi v. United States, 1943, 320 U.S. 81, 100, 63 S.Ct. 1375, 87 L.Ed. 1774.

"* * * The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. * * * And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. * * *" Nebbia v. New York, 1934, 291 U.S. 502, at page 525, 54 S.Ct. 505, 510, 78 L.Ed. 940.

▆▆ If the classification is fair and reasonable, no constitutional inhibition exists, Hirabayshi v. United States, supra. Here the classifications are users of and persons addicted to the use of narcotics and persons convicted of violation of narcotic or marihuana laws of the United States or any state. The passage by Congress of the Narcotic Control Act of 1956 (of which § 1407, Title 18 U.S. C.A. is a part) shows the awareness of Congress to the narcotic problem in all its ramifications. The court has taken judicial notice of the importance of the prohibited classes of persons, to the general problem. We suggest no more reasonable classification could have been made and that the statute has a "real and substantial relation to the object sought to be obtained," Nebbia v. New York, supra.

▆ Nor was it necessary for Congress to state in the Act the reason or necessity for such classification. A reading of the Narcotic Act of 1956, P.L. 728, 84th Congress, c. 629, 2nd Session, 70 Stat. 567, shows the concern and purpose of Congress. Sec. 302 of the Act, 21 U.S.C.A. § 198, provides for co-operation with the states, (1) concerning legislation (2) exchanging of information (3) training programs and (4) rec-

ords. This, read with the rest of the Act speaks clearly of the purpose of the Act and the classification contained therein.

7. *The words "addicted to or uses"*

The statute in setting up the classes of persons subject to the Act has used the words "who is addicted to or uses narcotic drugs." Since the disjunctive "or" is used two classifications of persons are apparently here set up.

The word *"addicted,"* gives us no more concern than the words *"import or bring"* gave the 1st Circuit in Palmero v. United States, 1940, 112 F.2d 922, 924, when the court held they must be construed in their natural meaning. Pon Wing Quong v. United States, 9 Cir., 1940, 111 F.2d 751, 756, held the word "facilitate" was subject to it's ordinary dictionary meaning.

▆ As to *"addicted,"* Webster's New Collegiate Dictionary (1953) defines *"addict"* the verb, as "to apply habitually, as one's mind to speculation; to give (oneself) up or over, as to versifying, as a constant practice; to habituate." The noun *"addict"* is defined as "one who is addicted to a habit, especially to the taking of some drug." *"Addicted"* the adjective is defined as "given up or over (to a practice)." *"Addiction"* the noun, is defined as the "state of being addicted; also habituation, esp. to drugs." We think the ordinary dictionary meaning of the words are clear.

Congress at any rate, has defined the word "addict" in 42 U.S.C.A. § 201(k) *as used in the statute,* dealing with the Public Health Service, as follows:

"(k) The term 'addict' means any person who habitually uses any habit-forming narcotic drugs so as to endanger the public morals, health, safety, or welfare, or who is or has been so far addicted to the use of such habit-forming narcotic drugs as to have lost the power of self-control with reference to his addiction;"

We hold alternatively that Congress used the term "addicted," having in mind its prior definition of "addict" in another statute.

Attack is made on the word "uses"—under the Due Process clause of the Fifth Amendment. Counsel ask, "Is a user one who has used narcotics only once in the past or once a month, or once every six months?"

The question is not here involved and is only academic. Indictments Nos. 26641 and 26644 used the words "was then addicted to *and* used narcotic drugs." No indictment herein charges only "using." The word "addicted" implies habitual use as we have above pointed out. The language used in indictments Nos. 26641 and 26644 is the equivalent of alleging the defendant was "addicted to and habitually used" narcotics. The language used is adequate—not uncertain and clearly identifies the class of persons set up by the statute.

 Since no defendant in our cases has been charged merely as a "user," none are entitled to raise the question of the scope of the words "uses narcotic drugs" standing alone. We will decide this problem if and when it arises.

## VI.

**The Convicted Offender Need Not Have Been Imprisoned For More Than One Year, to be Required to Register.**

Sec. 1407, Title 18 U.S.C.A. provides in part, "* * * no citizen of the United States * * * who has been convicted of a violation of any of the narcotic or marihuana laws of the United States, or any State thereof, *the penalty for which is imprisonment for more than one year*, shall depart from or enter into * * * the United States," etc. [Emphasis supplied.]

It is contended that where a defendant has suffered a conviction for a violation of a state narcotic or marihuana law —e. g. Sec. 11500, the Health and Safety Code of one of the California narcotic laws, but the sentence imposed was for less than one year, that such defendant is without the terms of the statute.

Sec. 17, California Penal Code declares a crime a felony if punishable with death or imprisonment in state prison. It pro-vides, however, if the crime is also punishable by fine or imprisonment in a county jail, it shall be deemed a misdemeanor, if the judgment is other than for imprisonment in a state prison. There is an exception concerning commitment to the California Youth Authority, not pertinent here. We can generally say that the sentence *imposed* determines whether the crime is a felony or misdemeanor.

Federal law on the contrary, provides that "any offense punishable by death or imprisonment for a term exceeding one year is a felony," Sec. 1, Title 18 U.S. C.A. Thus, if the *possible penalty* may exceed more than one year in prison, then the conviction results in a felony, regardless of the penalty *actually* imposed, Cartwright v. United States, 5 Cir., 1944, 146 F.2d 133.

Sec. 11500, California Health and Safety Code merely lists a series of prohibited acts involving narcotics. Sec. 11713 of the same code provides a penalty of imprisonment in the county jail for not more than one year or in the state prison from five years to life.

Under California law the conviction in these cases was for a misdemeanor, Sec. 17, California Penal Code. Defendant argues that since the resulting conviction was not that of a felony, or more specifically that the penalty was not "imprisonment for more than one year," the defendant has not violated Sec. 1407, Title 18, U.S.C.A. The question hinges on the meaning of the words in Sec. 1407, "the penalty for which is imprisonment for more than one year."

We hold it refers to the penalty which was provided for by the State statute, i. e. what was the *penalty* provided in such statute which could have been invoked, and not the actual *punishment* imposed in the particular case.

The Congress of the United States, without doubt, was familiar with the federal rule as to what constitutes a felony or misdemeanor conviction and that such determination is made by reason of the penalties provided in a statute —i. e. what penalty could have been in-

voked, and not the punishment actually imposed.

Moreover, the clear meaning of the word "penalty" refers to the provisions of the statute generally and not to the "punishment" imposed in the particular case. Had Congress intended otherwise, it could easily have so stated. It did not.

 The contention is made that the word *"is"* in the phrase, "the penalty for which *is* imprisonment for more than one year," is significant if not controlling; that as a matter of grammar and reality the penalty under Sec. 11500, California Health and Safety Code *is both more and less than one year,* depending on what sentence the judge should impose. This argument confuses penalty and punishment. The *penalty* contained in the section *is* more than one year, that is the prisoner might be sentenced to a term for more than one year. The *prisoner was* punished and sentenced to less than one year. Although more precise language might have been used, the intent of Congress is clear. The contention is without merit.

Orders in the cases herein have been made in conformity with this opinion.