**UNITED STATES of America**

v.

**Randolph Erwin ROSENSON.**

**Cr. A. No. 30448.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 30, 1968.

Louis C. LaCour, U.S. Atty., Harry Connick, Asst. U.S. Atty., New Orleans, La., for United States of America.

G. Wray Gill, Sr., George M. Leppert, Gill, Bernstein, Leppert & Gill, New Orleans, La., Camille F. Gravel, Jr., Gravel & Doggett, Alexandria, La., for defendant.

HEEBE, District Judge:

The fear expressed by Chief Justice Warren in his dissenting opinion in Grosso v. United States, 390 U.S. 62 (1968) at 84, 88 S.Ct. 709, 19 L.Ed.2d 906 is now a reality, although possibly in a different posture,[1] for we are here asked to upset a conviction on all three counts in an indictment charging the defendant with violating 18 U.S.C. § 1407. The defendant is a citizen of the United States and was convicted of attempted possession of narcotics under La.Stat.Ann. 14:27 (40: 962), the penalty for which is imprisonment for more than one year. Count I of the indictment charged the defendant with departing from the United States through New Orleans, a port of departure, without registering with a Customs official. Count II charged the defendant with entering the United States through the port of New Orleans without registering, and Count III charged the defendant with failing upon reentry to surrender the certificate required to be

---

1. It may be that the Chief Justice's comments were generated by various statutes applicable to the smuggling, importation, transportation and possession of narcotics and marihuana and the thought that the registration provisions of 18 U.S.C. § 1407 would enhance the likelihood of one violating such laws to be apprehended and convicted. The situation here is obviously quite different, and it may well be that this, rather than the above, is the very situation which Chief Justice Warren envisioned.

obtained when leaving the United States. The defendant was tried by the Court without a jury on July 20, 1967, and was found guilty on all three counts on October 11, 1967. Prior to sentencing, which was continued several times, the United States Supreme Court rendered its opinions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, supra; and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). On the basis of these decisions the defendant filed a "Motion in Arrest of Judgment" and a "Motion for New Trial," both on the ground that the privilege against self-incrimination affords a complete defense to these charges. An alternative ground for both motions was that attempted possession of narcotics is not one of the narcotic or marihuana laws of the State of Louisiana. The United States objected on the ground that the motions were not timely filed. We dispensed with this objection in a former opinion in which we held that the constitutional argument was a "nonwaivable" defense within the meaning of F.R.Crim. P. 12(b) (1) and that, under the circumstances, it was procedurally proper to raise it at that time under F.R.Crim.P. 12(b)(3). The alternative argument was treated as a claim that the indictment fails to state an offense which was properly raised at that time under F.R. Crim.P. 12(b) (2). United States v. Rosenson, 291 F.Supp. 867 (E.D.La. 1968).

■ Turning first to the constitutional argument, we now hold that the rationale of Marchetti, Grosso, and Haynes require us to vacate the conviction on Counts II and III and to dismiss those counts. The same real and substantial hazards of self-incrimination which existed in those cases are manifest in the circumstances of this case. In order to comply with the provisions requiring registration and surrender of the certificate upon reentry, the defendant, in effect, would be admitting that he had violated the law upon departure by failing to register because in order to register upon reentry the certificate which should have been obtained by registering upon departure must be surrendered. 19 C.F.R. § 23.9a. If he is unable to surrender the certificate for any reason, he may still register upon reentry under an alternative procedure, but we do not believe that this eliminates, or even lessens, the hazard of self-incrimination because here, as in Marchetti, Grosso, and Haynes, the statutory obligations are directed exclusively to individuals inherently suspect of criminal activities. This is obvious from the fact that the statute applies only to those persons who have been previously convicted of a narcotics or marihuana violation. Thus, when a person attempts to register upon reentry without having the certificate required to be obtained upon departure, this must surely wave the incriminating red flag of guilt in the face of the prosecuting officials.[2] This is true in spite of the fact that it is possible that such a person did comply with the requirements of the law upon departure for such instances, as in Haynes, must be deemed "uncommon."

■ With respect to Count I, however, the record does not support a finding that the registration requirements upon departure created a real and substantial hazard of self-incrimination. The reason for this is not that such a person is not inherently suspect of criminal activities at that time, but because the record before us fails to reflect, not only that there is a real and substantial possibility, but that there is any possibility that merely by registering with the Cus-

2. It may be that the prosecuting officials, when so signaled, would be more interested in discovering a violation of the kind mentioned in footnote 1. Even if this be true, it in no way detracts from the clear incrimination of the prior violation upon departure and thus the applicability of the privilege under the rationale of Marchetti, Grosso, and Haynes, for it would be quite preposterous to believe that the doctrine is hinged upon a showing of which violation the prosecuting officials would rather utilize the registration requirements to establish.

toms officials the defendant opens himself to a criminal prosecution. The defendant has completely failed to show how, by registering upon departure, he renders himself more susceptible to a criminal prosecution and conviction. Nor is it clear from the face of Count I that registration is an admission of guilt as it is from the face of Counts II and III. On oral argument counsel for the defendant made some comments about the possibility of a parole violation in leaving the country but this argument was not developed and his comments were vague and general. It was not established by argument or evidence that the defendant violated the conditions of his parole in leaving the country, and we do not deem it necessary to pass upon such a "will-of-the-wisp."

█ In our former opinion in this matter, United States v. Rosenson, supra, we did not hold, as contended by the defendant, that *Marchetti, Grosso* and *Haynes* applied retroactively to this prosecution. We merely held that procedurally it was a proper time to *raise* the argument and left for decision at this time the substantive question of whether the rationale of those cases could be applied retroactively to this case. In light of the opinions which have been rendered subsequent to the Supreme Court decisions, there is no doubt that the principles announced in those cases are applicable to persons tried and convicted prior thereto, even though the privilege against self-incrimination was not asserted at the time of the trial. United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968); Greenwood v. United States, 392 F.2d 558

(4th Cir. 1968); United States v. Lookretis, 398 F.2d 64 (7th Cir. 1968); Harris v. United States, 390 F.2d 616 (8th Cir. 1968); Drennon v. United States, 393 F.2d 342 (8th Cir. 1968); Isaac v. United States, 293 F.Supp. 1096 (D.S.C. 1968). This was made clear by *Grosso* in which the defendant failed to argue, even in the Supreme Court, that the privilege against self-incrimination was a defense to the charges against him of willful failure to pay the special occupational tax imposed by 26 U.S.C. § 4411. Yet the conviction on these charges was also reversed.

█ There remains for consideration only the fact that the defendant took the stand and testified in this case. We must decide whether this fact constituted a waiver and therefore put the defendant outside the protection of the privilege. Notwithstanding Leary v. United States, 392 F.2d 220 (5th Cir. 1968), we hold that this did not constitute a knowing and intelligent waiver of the privilege against self-incrimination. Our reasoning is simple. Ordinarily the failure to assert this as a defense at the trial would constitute a waiver of that constitutional right. Likewise, the fact that the defendant testified as to the facts of all three offenses would ordinarily constitute a waiver of that constitutional right. However, the cases cited above hold, and we also hold, that the failure to assert it as a defense at the trial is not a waiver because neither the defendant nor his attorneys are required to anticipate rulings of the Supreme Court which upset well-entrenched rules,[3] and therefore it does not satisfy the requirement estab-

---

3. In our former opinion, United States v. Rosenson, 291 F.Supp. 867 (E.D.La. 1968), we pointed out that Palma v. United States, 261 F.2d 93 (5th Cir. 1958); Reyes v. United States, 258 F. 2d 774 (9th Cir. 1958); and United States v. Eramdjian, 155 F.Supp. 914 (S.D.Cal.1957), clearly established that 18 U.S.C. § 1407 is not unconstitutional as violative of the privilege against self-incrimination. We read those decisions, particularly the *Eramdjian* opinion upon which both the Fifth Circuit and Ninth Circuit decisions were based, as also fore-

closing the argument that the privilege against self-incrimination affords the defendant a complete *defense* to a prosecution under 18 U.S.C. § 1407. The broad language of the *Eramdjian* decision prevents us from holding that the principle espoused by the Supreme Court in its recent opinions was not unknown to the defendant by virtue of the decisions in *Palma, Reyes,* and *Eramdjian* or that those decisions did not preclude the defendant from asserting the privilege against self-incrimination as a *defense.*

lished by Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and its progeny that to waive a constitutional right, the defendant must *knowingly* and intelligently waive that right. Unless the defendant is fully aware of a constitutional right, he cannot effectively waive that right. Thus, the failure to assert the privilege against self-incrimination by way of defense at the time of the trial does not constitute a waiver of that constitutional right because the right was unknown. The only difference between the failure to assert the privilege as a defense and the fact that the defendant testified is that the latter involves affirmative action on the part of the defendant while the former involves passive omission to act. This difference, however, does not and cannot alter the requirement that to waive a constitutional right the defendant must be fully aware of that right. Consequently, the fact that the defendant testified at his trial is no more a waiver of the privilege against self-incrimination than when he failed to assert it as a defense. We do not read the *per curiam* opinion in *Leary* as being contrary to our decision for in that case, in spite of some of the language contained therein, the Fifth Circuit apparently held that the reasoning of *Marchetti, Grosso,* and *Haynes* was not applicable to the facts of that case because the statute in *Leary,* unlike the statute in this case, did not clearly require an admission of guilt.

■ While the motion before us is not to be considered as a motion for a new trial, we note that under the proper circumstances a new trial is a possible result. In this case, however, we do not feel that a new trial is warranted or would serve any useful purpose. This case was tried by the Court without a jury. The issues were simple, and the evidence was clear and direct. The presence of Counts II and III and the introduction of evidence thereon in no way prejudiced the trial of the defendant as to Count I. Consequently, the dismissal of Counts II and III and the convictions thereon is, under the circumstances, all the relief to which the defendant is entitled.

■ We now turn to the alternative argument advanced by the defendant that attempted possession of narcotics is not one of the narcotic or marihuana laws of the State of Louisiana and that therefore the indictment fails to state an offense. The defendant premises his argument on the fact that Louisiana has adopted the Uniform Narcotic Drug Act which is embodied in La.Stat.Ann. 40:961–40:984 and that he was not convicted of a violation of that Act, which does not make attempted possession of narcotics a crime, but rather was convicted under the general criminal statute, La.Stat.Ann. 14:27, which makes it a crime to attempt to commit a crime. Though defendant's argument is truly ingenious, it must fail for it would require us to engraft subtle distinctions upon the law unwarranted by the clear language of 18 U.S.C. § 1407. That section refers to persons convicted of a violation "of *any* of the narcotic or marihuana *laws* of * * * any State." This language clearly contemplates *any* of the narcotic or marihuana laws. The niceties and nuances of state law have no application under 18 U.S.C. § 1407. Adams v. United States, 299 F.2d 327 (9th Cir. 1962). Therefore, the fact that the attempt provision is found in a different part of the statute books has no relevance. The relevant inquiry is not to determine where the crime is found in the books but rather to determine what the crime is. Here the crime of which the defendant was convicted is attempted possession of narcotics. That should answer the question.

While we think the matter is free from complexity and is as simple as stated above, we will go further and meet the defendant's argument head on. The crux of defendant's argument is that *all* of the narcotic and marihuana laws of the State of Louisiana are found in La.Stat.Ann. 40:961–40:984.[4] It is true that these

4. The defendant places some reliance on an opinion rendered by the Attorney Gen-

eral of Louisiana in 1952 in which it is stated that attempted possession of nar-

provisions do not make attempted possession of narcotics a crime. However, without the crime of possession of narcotics there could be no crime of attempted possession of narcotics. Therefore, to the extent that La.Stat.Ann. 14:27 makes attempted possession of narcotics a crime, we believe that it must be considered part and parcel with the provisions of the Uniform Narcotic Drug Act and, as such, one of the narcotic laws of Louisiana. Our conclusion that the crime of attempted possession of narcotics cannot be segregated from the "narcotic laws" of Louisiana and classified as some sort of general offense is buttressed by the fact that an attempt is but a lesser grade of the intended crime, La.Stat.Ann. 14:27, and by the fact that attempted possession of narcotics is a responsive verdict to a charge of possession of narcotics in Louisiana and in other jurisdictions which have adopted the Uniform Act. State v. Johnson, 228 La. 317, 82 So.2d 24 (1955); State v. Broadnax, 216 La. 1003, 45 So.2d 604 (1950); Simpson v. United States, 195 F.2d 721, 13 Alaska 635 (9th Cir. 1952).[5] Finally, we note that our conclusion accords with the avowed purpose of Congress "to facilitate more effective control of the international traffic in narcotic drugs, and to prevent the spread of drug addiction" in enacting 18 U.S.C. § 1407.

In accordance with the foregoing opinion, it is the order of the Court that the convictions on Counts II and III be, and hereby are, vacated, annulled and set aside. It is the further order of the Court that Counts II and III be, and hereby are, dismissed. It is the further order of the Court that the defendant's motion to dismiss or "Motion in Arrest of Judgment" and "Motion for New Trial" with respect to Count I be, and hereby is, denied. It is the further order of the Court that sentencing on Count I be, and hereby is, set for October 16, 1968, at 2:00 p. m.

cotics is a "crime entirely separate and distinct from the State Narcotic Law" and that therefore a person convicted of attempted possession of narcotics can become eligible for parole. Op.Atty.Gen., 1950–1952, p. 25. Reliance on this opinion, however, is misplaced because in 1957 the Attorney General of Louisiana issued an opinion exactly contrary to the former opinion. Op.Atty.Gen., 1956–1958, pp. 150–151. Thus, if anything, the opinion of the Attorney General of Louisiana, at least the latest, is in accord with our conclusion.

5. We have not overlooked the fact that La.Stat.Ann. 40:978 makes it a crime to obtain or *attempt to obtain* a narcotic drug by fraud, deceit, misrepresentation, subterfuge, forging or altering a prescription, concealing a material fact, using a false name or giving a false address. The fact that the Uniform Narcotic Drug Act makes some attempts unlawful, however, does not persuade us to accept the defendant's argument in light of the other factors which we think are more persuasive and upon which we rely.