**UNITED STATES of America,**
Appellee,

v.

**Walter JUZWIAK, Appellant.**

No. 380, Docket 25135.

United States Court of Appeals
Second Circuit.

Argued June 6, 1958.

Decided Aug. 25, 1958.

William E. Willis, New York City, for appellant.

James R. Lunney, Asst. U. S. Atty., New York City (Paul W. Williams, U. S. Atty., New York City, on the brief), for appellee.

Before CLARK, Chief Judge, and PICKETT and MOORE, Circuit Judges.

PICKETT, Circuit Judge.

The defendant, Walter Juzwiak, a citizen of the United States, after having been convicted of a violation of a New York State narcotics law, departed from the United States without first registering as required by Title 18 U.S.C.A. Section 1407, and the rules prescribed by the Secretary of the Treasury. He was found guilty on a one-count information of violation of the aforementioned Section 1407, which provides:

"(a) In order to further give effect to the obligations of the United States pursuant to the Hague convention of 1912, proclaimed as a treaty on March 3, 1915, (38 Stat. 1912), and the limitation convention of 1931, proclaimed as a treaty on July 10, 1933, (48 Stat. 1571), and in order to facilitate more effective control of the international traffic in Narcotic drugs, and to prevent the spread of drug addiction, no citizen of the United States who is addicted to or uses narcotic drugs, * * * or who has been convicted of a violation of any of the narcotic or marihuana laws of the United States, or of any state thereof, the penalty for which is imprisonment for more than one year, shall depart from * * * the United States, unless such person registers, under such rules and regulations as may be prescribed by the Secretary of the Treasury with a customs official, agent, or employee at a point of entry or a border customs station. Unless otherwise prohibited by law or Federal regulation such customs official, agent, or employee shall issue a certificate to any such person departing from the United States; and such person shall, upon returning to the United States, surrender such certificate to the customs official, agent, or employee present at the port of entry or border customs station.

"(b) Whoever violates any of the provisions of this section shall be punished for each such violation by a fine of not more than $1000 or imprisonment for not less than one or more than three years, or both."

The contention is made that the information did not charge that the failure to register was willful and that the evidence discloses that the defendant did not have actual knowledge of the statutory requirement to register, and therefore, under the rule of Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228, rehearing denied 355 U.S. 937, 78 S.Ct. 410, 2 L.Ed.2d 419, the conviction cannot stand.

The facts are not in dispute. It is admitted that the defendant had been convicted of the violation of the narcotics law above mentioned, and that he left the United States without registering and obtaining the certificate required by the statute. He testified that he did not know of the statutory requirement to register when he accepted employment as a seaman on a ship bound for Europe. He stated that he first learned of the registration requirement when he was questioned by a Treasury Agent at the time his ship returned to the United States.

It has generally been held that when criminal intent has not been made an essential element of a statutory crime, such intent need not be alleged or proved to sustain a conviction. 14 Am.Jur., Criminal Law, § 24; Shevlin-Carpenter Co. v. State of Minnesota, 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930. See also United States v. Hohensee, 3 Cir., 243 F.2d 367, certiorari denied 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136, rehearing denied 354 U.S. 927, 77 S.Ct. 1376, 1 L. Ed.2d 1441; Hargrove v. United States, 5 Cir., 67 F.2d 820, 90 A.L.R. 1276; Landen v. United States, 6 Cir., 299 F. 75. In Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, the Supreme Court discusses crimes whose sources are in the common law and, as such, require proof of criminal intent to sustain a conviction, and those where the crime depends upon no mental elements, but consist only of acts or omissions forbidden by statute.[1] The offenses included in this latter category are sometimes referred to those involving public welfare. In United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 302,

---

1. In referring to this type of statutory offense the Court said: * * * These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or in-

66 L.Ed. 604, the defendant was charged with making a forbidden sale of narcotics without an allegation of criminal intent. In sustaining the conviction, the Court said:

"While the general rule at common law was that the *scienter* was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it (Reg. v. Sleep, 8 Cox C.C. 472), there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court. It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But that objection is considered and overruled in Shevlin-Carpenter Co. v. [State of] Minnesota, 218 U.S. 57, 69, 70, 30 S.Ct. 663, 666 (54 L.Ed. 930), in which it was held that in the prohibition or punishment of particular acts, the state may in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.' Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of *mala in se.*"

On the same day the Court, in another narcotics case, said:

"* * * If the offense be a statutory one, and intent or knowledge is not made an element of it, the indictment need not charge such knowledge or intent. * * *" United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619.[2]

In the Lambert case [78 S.Ct. 243] the Court had under consideration a prosecution for the violation of a Los Angeles, California ordinance which required

vasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving." 342 U.S. 255, 256, 72 S.Ct. 246.

2. In United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 136, 88 L.Ed. 48, the defendant was charged with the introduction or delivery into interstate commerce of an adulterated or misbranded drug. In discussing the duty of shippers and the necessity of knowledge of a wrongdoing, the Court said:

"* * * The prosecution to which Dotterweich was subjected is based on a now familiar type of legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a pub-

persons who had been or were thereafter convicted of a felony in California or elsewhere to register with the Los Angeles Chief of Police, and made it unlawful for any such person to remain in Los Angeles for a period of more than five days without registering. Although the defendant, at the time of her arrest, had been a resident of Los Angeles for over seven years, she had no knowledge of the existence of the ordinance. While recognizing the holdings of Balint and Behrman and the time-honored principle that "ignorance of the law will not excuse," the Court held that the registration provision of the ordinance "as sought to be applied here," violated the Due Process Clause of the Fourteenth Amendment. It was stated: "We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand." The Court stressed the fact that the defendant's conduct—the failure to register—which constituted a violation of the ordinance, was wholly passive. In other words, no act of the defendant was required in order to constitute a violation. In the case at bar the failure to register is not a violation. The violation is the positive act of leaving or entering the United States without registering. Although, as stated in the Morissette case, apparently no court has "undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not," we think the case before us falls within that class of statutory crimes that do not

require willfulness or intent such as Balint and Behrman, and is not controlled by Lambert. Reyes v. United States, 9 Cir., 258 F.2d 774.

Furthermore, there was a showing of the probability that the defendant had knowledge of his duty to register.[3] The evidence discloses that agents of the Treasury Department posted notices of the statutory requirement to register at the place where the defendant obtained employment, in conspicuous places on the ship which he frequented before leaving the United States, and throughout the union hall where he was present on numerous occasions before obtaining employment and leaving the country. Such a showing satisfies the "probability of such knowledge" requirement of the Lambert case.

The Court desires to express its appreciation for the services of William L. Willis, who was assigned to represent the appellant on this appeal.

Affirmed.

CLARK, Chief Judge (concurring in the result).

I have more difficulty than my brothers in distinguishing Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228, and, in view of the importance of the issue, believe it worth while to note my doubts. I do not really see a more positive act by this seaman in leaving the country with his ship than Lambert's continued stay in Los Angeles; and I am dubious as to the reality of notice through posters to ordinary seamen coming in and going out of the country. On the other hand,

lic danger. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604. And so it is clear that shipments like those now in issue are 'punished by the statute if the article is misbranded [or adulterated], and that the article may be misbranded [or adulterated] without any conscious fraud at all. It was natural enough to throw this risk on shippers with regard to the identity of their wares * * *.' United States v. Johnson, 221 U.S. 488, 497, 498, 31 S.Ct. 627, 628, 55 L.Ed. 823."

See also United States v. Eramdjian, D.C.S.D.Cal.1957, 155 F.Supp. 914.

3. In Lambert v. People of State of California, 355 U.S. 225, 227, 78 S.Ct. 240, 242, 2 L.Ed.2d 228, the Court stated the question presented to be: " * * * whether a registration act of this character violates Due Process where it is applied to a person who has no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge."

**848**

this legislation obviously assists in the execution of a strongly held Congressional policy for the control of the traffic in narcotic drugs. Courts must be slower to strike down such a policy, whatever doubts they may have as to its ultimate wisdom, than to invalidate legislation such as the Los Angeles ordinance in the Lambert case, which was at most "but a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is compiled." 355 U.S. 225, 229, 78 S.Ct. 240, 243, 2 L.Ed.2d 228. And the Lambert case disclosed so sharp a division in the Court that the extension of its policy to new areas may well be thought unlikely. Hence, notwithstanding some concern, I am content not to depart from my brothers' final result.