William WORTHY, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 20062.

United States Court of Appeals Fifth Circuit.

Feb. 20, 1964.

388

William M. Kunstler, New York City, Howard W. Dixon, Miami, Fla., for appellant.

Robert L. Keuch, J. Walter Yeagley, Kevin T. Maroney, Attys., Dept. of Justice, Washington, D. C., Alfred E. Sapp, Asst. U. S. Atty., Miami, Fla., William A. Meadows, Jr., U. S. Atty. Southern District of Florida, Carol Mary Brennan, Attorney, United States Department of Justice, Washington, D. C., for appellee.

Michael B. Standard, David N. Ellenhorn and Melvin L. Wulf, New York City, Benjamin E. Smith, New Orleans, La., for American Civil Liberties Union, amicus curiae.

Before TUTTLE, Chief Judge, and JONES and BELL, Circuit Judges.

JONES, Circuit Judge.

William Worthy, Jr., the appellant, is a newspaperman and lecturer. He was issued a passport in 1955. It provided that it was not valid for travel in the countries therein designated, including Communist China and Hungary. Notwithstanding the restrictions in his passport, Worthy traveled extensively in Communist China and Hungary. In 1957 he applied for a renewal of his passport. He was asked for a commitment, which he declined to give, that he would abide the restrictions. The renewal of his passport was refused by the State Department. Its action was upheld. Worthy v. Herter, D.C.Cir.1959, 106 App.D.C. 153, 270 F.2d 905, cert.

den. 361 U.S. 918, 80 S.Ct. 255, 4 L. Ed.2d 186. The decision has attracted the interest of the reviewers. See 28 Fordham L.Rev. 816; 28 Geo.Wash.L. Rev. 782; 73 Harv.L.Rev. 1610; 5 N.Y.L. Forum 402; 38 N.C.L.Rev. 260; 34 St. Johns L.Rev. 315; 62 W.Va.L.Rev. 422. In the early summer of 1961 Worthy advised his booking agent of his plan to visit Cuba, expressing the hope he could again visit China, saying he had competent legal advice and knew what he was doing, and requesting that his destination be kept confidential.

On July 24, 1961, Worthy sailed on the S. S. Guadaloupe of the Spanish Line and left the vessel at Havana, Cuba. On October 10, 1961, he arrived from Havana on a commercial air line flight at the International Airport at Miami, Florida. He was charged by indictment in the Southern District of Florida with unlawfully entering the United States without a valid passport in violation of 8 U.S.C.A. § 1185(b).[1] The statute, in so far as is here pertinent, provides as follows:

"(a) When the United States is at war or during the existence of any national emergency proclaimed by the President, or, as to aliens, whenever there exists a state of war between or among two or more states, and the President shall find that the interests of the United States require that restrictions and prohibitions in addition to those provided otherwise than by this section be imposed upon the departure of persons from and their entry into the United States, and shall make public proclamation thereof, it shall, until otherwise ordered by the President or the Congress, be unlawful * * *

"(b) After such proclamation as is provided for in subsection (a) of this section has been made and published and while such proclamation is in force, it shall, except as otherwise provided by the President, and subject to such limitations, and exceptions as the President may authorize and prescribe, be unlawful for any citizen of the United States to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid passport. * * *

"(c) Any person who shall willfully violate any of the provisions of this section, or of any order or proclamation of the President promulgated, or of any permit, rule, or regulation issued thereunder, shall, upon conviction, be fined not more than $5,000, or, if a natural person, imprisoned for not more than five years, or both; and the officer, director, or agent of any corporation who knowingly participates in such violation shall be punished by like fine or imprisonment, or both; and any vehicle, vessel, or aircraft together with its appurtenances, equipment, tackle, apparel, and furniture, concerned in any such violation, shall be forfeited to the United States. * * *

"(d) The term 'United States' as used in this section includes the Canal Zone, and all territory and waters, continental or insular, subject to the jurisdiction of the United

---

1. "The Grand Jury Charges:

"That on or about October 10, 1961, at which time there was in force and effect a state of national emergency proclaimed by the President of the United States, William Worthy, Jr., the defendant herein, then and there being a citizen of the United States and not being within any of the exceptions contained in the regulations duly issued and promulgated under Section 1185(b) of Title 8, United States Code, to wit: CFR 53.2 and 53.3, at the Miami International Airport, Miami, Florida, within the Southern District of Florida, did unlawfully, wilfully, and knowingly enter the United States without bearing a valid passport, the said defendant then and there having arrived from the Republic of Cuba, a place outside the United States for which a valid passport is required under the aforesaid regulations.

"In violation of Section 1185(b), Title 8, United States Code."

States. The term 'person' as used in this section shall be deemed to mean any individual, partnership, association, company, or other incorporated body of individuals, or corporation, or body politic." 8 U.S.C.A. § 1185.

An unrevoked Presidential Proclamation of January 17, 1953, provides in part, as follows:

"* * * I, HARRY S. TRUMAN, President of the United States of America, acting under and by virtue of the authority vested in me by section 215 of the Immigration and Nationality Act and by section 301 of title 3 of the United States Code, do hereby find and publicly proclaim that the interests of the United States require that restrictions and prohibitions, in addition to those otherwise provided by law, be imposed upon the departure of persons from, and their entry into, the United States; and I hereby prescribe and make the following rules, regulations, and orders with respect thereto:

"1. The departure and entry of citizens and nationals of the United States from and into the United States, including the Canal Zone, and all territory and waters, continental or insular, subject to the jurisdiction of the United States, shall be subject to the regulations prescribed by the Secretary of State and published as sections 53.1 to 53.9, inclusive, of title 22 of the Code of Federal Regulations. Such regulations are hereby incorporated into and made a part of this proclamation; and the Secretary of State is hereby authorized to revoke, modify, or amend such regulations as he may find the interest of the United States to require. * * *" 18 Fed.Reg. 489, 67 Stat. p. c. 32.

Worthy filed a motion for a change of venue, a motion to inspect the grand jury minutes, and a motion to dismiss the indictment. The motions were de-

nied. Trial was had before the court without a jury and the appellant was found guilty as charged. He was sentenced to three months imprisonment and nine months probation. On this appeal from the judgment of the district court, the principal contentions of the appellant, and those which we will here notice, are that the statute, 8 U.S.C.A. § 1185(b) is too uncertain, indefinite and vague to define a criminal offense, that the Government was guilty of entrapment in permitting the appellant to enter the United States, that the indictment is defective in failing to set forth the essential facts constituting the offense charged, that the statute is not applicable to United States citizens in times of peace, and that, as applied to the appellant under the facts shown, the statute is unconstitutional. Subsequent to argument the Court has been advised that the appellant waives "all objections except constitutional ones in so far as his appeal * * * [is] concerned." Such waiver cannot, we think, relieve us of the duty to decide the appeal without deciding constitutional issues if it can be done. Therefore we consider the other questions.

It is urged by the appellant that there are several fatal ambiguities in the statute. The phrase, "bears a valid passport," is said to be vague and ambiguous. It is contended that the word "bear" should be given the meaning of "carry," or "have in possession." The appellant takes the position that a person of ordinary intelligence would be confused by this phrase and would be unable to ascertain whether a citizen would incur the criminal sanction upon returning to and entering the United States after an absence abroad if his passport had been lost or misplaced, or if the passport requirement as to the foreign country visited did not exist at the time of his departure but became effective before his return. The Government would have us hold that "bear," as used in the Act, has a broader meaning than that ascribed to it by the appellant. It is not necessary that we do so. It is enough to point out that the

criminal provisions of the portions of the statute requiring citizens to have passports for departing from or entering the United States require that the violations be willful if criminal penalties are to be incurred. There is no ambiguity in the phrase "bears a valid passport."

The appellant puts forward the proposition that the intent and purpose of the Congress was to make criminal clandestine departures from or entries to the United States, and because there was no attempt to conceal his entry, the act did not apply to him. The statute was enacted, beyond doubt, for the purpose stated by the appellant, but it reached much further. It was the clear intent of the statute to require passports for foreign travel, with some exceptions, to permit reasonable restrictions to be placed upon foreign travel, and to impose criminal penalties for willful violations. At this point consideration is being given only to the question of ambiguity. The question of validity will be hereafter discussed.

We are reminded by the appellant that the indictment refers only to Section 1185(b), which defines the prohibited acts, and omits any reference to Section 1185(c) which prescribes the penalty for violation. If the citation of the statute is incomplete or otherwise erroneous, it will be no ground for dismissal unless the error or omission has misled the appellant to his prejudice. Rule 7, Fed.Rules Crim.Proc. 18 U.S. C.A. No prejudice is here shown.

The appellant indicates that it may not be clear whether the language, "willfully violate any of the provisions of this section," refers to entering the United States, or to entering the United States without bearing a valid passport. There is no ambiguity here. The statutory provision is that it shall be unlawful for a citizen to enter the United States unless he bears a valid passport. Questions of ambiguity cannot be created by rewording or scissoring the words of the statute.

In Section 1185(d) a separate definition of the term "United States" which differs in language from that contained in the general definitions section of the Immigration and Nationality Act, 8 U.S.C.A. § 1101(a) (38), is given. The specific definition includes the Canal Zone, which is omitted from the general definition. The specific definition includes "all territory and waters, continental or insular, subject to the jurisdiction of the United States." The appellant finds an ambiguity in the inclusion of "waters" in the Section 1185(d) definition, because, the appellant fears, the act would be violated by the crossing, inward or outward bound, of the off-shore territorial boundary by a fishing boat or pleasure craft which reached no foreign shore, unless the occupants of the vessel were carrying passports. A passport is evidence of the permission of the sovereign to its citizen authorizing him to travel to foreign countries and to return to the land of his allegiance, as well as a request to foreign powers that the person to whom it has been issued may be allowed to pass freely and safely. A meaning will not be attributed to statutory language which would lead to an abuse or unjust result. Voris v. Gulf-Tide Stevedores, 5th Cir. 1954, 211 F.2d 549, cert. den. 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649; United States v. Gertz, 9th Cir. 1957, 249 F.2d 662; Federal Trade Commission v. Tuttle, 2nd Cir. 1957, 244 F.2d 605, cert. den. 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436. Cf. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877. The statute is not subject to the attack made upon it on the grounds of vagueness or ambiguity.

The appellant asserts that because he was not taken into custody upon his arrival from Cuba but was permitted a freedom of movement, the Government was guilty of entrapment. A statement of the appellant's contention is almost enough to refute it. There was no inducement of the appellant by any Government agent to depart from or return

to the United States without a passport. The design and plan were that of the appellant who wrote, "I know what I'm doing and * * * the possible repercussions." If the appellant had determined willfully to pursue an unlawful course of conduct, and did pursue it, the failure of the Government to stop him does not relieve him of the consequence of his acts. Rodriguez v. United States, 5th Cir. 1955, 227 F.2d 912; 1 Wharton's Criminal Law and Procedure 281 et seq. § 132; 15 Am.Jur. 24 et seq. Criminal Law §§ 335–336. No entrapment was here present. The principles of the case of Badon v. United States, 5th Cir. 1959, 269 F.2d 75, cert. den. 361 U.S. 894, 80 S.Ct. 199, 4 L.Ed.2d 152, relied upon by the appellant, have no application to any of the questions presented by this appeal.

■■■■ The indictment is asserted to be defective because it is in a paraphrase of the stark language of the statute without any allegation that the appellant left the United States unlawfully. An indictment which sets forth the offense substantially in the language of the statute is sufficient if the essential elements of the offense are charged. Rule 7(c) Fed.Rules Crim.Proc. 18 U.S. C.A.; Bland v. United States, 5th Cir. 1962, 299 F.2d 105; Reynolds v. United States, 5th Cir. 1955, 225 F.2d 123, cert. den. 350 U.S. 914, 76 S.Ct. 197, 100 L. Ed. 801, reh. den. 350 U.S. 929, 76 S.Ct. 301, 100 L.Ed. 812; Babb v. United States, 5th Cir. 1955, 218 F.2d 538. Cf. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240. Later in this opinion we will consider unlawful departure as a substantive offense. At this point we are only concerned with the question as to whether it is necessary to charge an unlawful departure from the United States in order to have a valid indictment for a violation of the prohibition of making an unlawful entry. We answer this question in the negative.

■■■■ The appellant contends that the statutory travel restrictions were incorporated in a war measure and do not apply to peace-time travel. The position is unsound. Nations may be hostile even though not at war. There are hazards in a cold war as well as in a declared war. Neither the language of the statute nor its legislative history, as we read them, is indicative of any legislative intent to restrict the operation of the statute to times of declared war. Cf. United States ex rel. Knauff v. Shaughnessy, Acting Director, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317. This observation applies, of course, only to the construction of the statute; not to its validity.

■■■■ Having resolved against the appellant all of the other issues, we are brought to the question as to whether the statutory prohibition, with penal sanctions, supplemented by an executive order, against the entry of a citizen into the United States unless he bears a valid passport, violates the rights of the citizen guaranteed by the Federal Constitution. The right to travel outside the United States is a right which is within the protection of the Constitution. The Supreme Court has held:

"The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment. * * * Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values. * * * Freedom to travel is, indeed, an important aspect of the citizen's 'liberty.'" Kent v. Dulles, 357 U.S. 116, 125–127, 78 S.Ct. 1113, 1118, 2 L.Ed.2d 1204. See also Dayton v. Dulles, 357 U.S. 144, 78 S.Ct. 1127, 2 L.Ed.2d 1221; Worthy v. Herter, supra; Frank v. Herter, D.C.Cir. 1959, 106 U.S.App.D.C. 54, 269 F.2d 245, cert. den. 361 U.S. 918, 80 S.Ct.

256, 4 L.Ed.2d 187; Shachtman v. Dulles, D.C.Cir. 1955, 96 U.S.App. D.C. 287, 225 F.2d 938; Antieau, Commentaries on the Constitution 375 et seq.

Although the right of foreign travel may not be arbitrarily or unreasonably restrained, it is not an absolute right. Kraus v. Dulles, 1956, 98 U.S.App.D.C. 343, 235 F.2d 840; Shachtman v. Dulles, supra. The right of the Congress to require passports and to impose reasonable restrictions upon foreign travel is not dependent upon the existence of a state of war, but may be exercised under the broad power to enact legislation for the regulation of foreign affairs. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644.

 The authorities before cited, particularly the opinions of the District of Columbia Circuit in the Worthy case and the Frank case, have so fully developed the doctrines and principles which sustain the validity of the requirement of a passport for foreign travel and the denial of a passport to the appellant, that we need do no more with respect to such questions than to refer again to them. The requirement and restrictions are applicable not only to Worthy and Frank, newspapermen who asserted rights of freedom of the press under the First Amendment, but also to a Congressman who claimed the restriction was a breach of the separation of powers. Porter v. Herter, D.C.Cir. 1960, 278 F.2d 280, cert. den. 361 U.S. 918, 4 L.Ed.2d 185, 80 S.Ct. 260, and 364 U.S. 837, 81 S.Ct. 70, 5 L.Ed.2d 61. Since Congress has the power to declare a policy with respect to foreign affairs, and to impose reasonable restrictions on the right of the citizen to travel in foreign countries, it follows that it may punish violations of the statute. See Hyde v. Shine, 199 U.S. 62, 25 S.Ct. 760, 50 L.Ed. 90.

 The prohibitory provision of Section 1185(b) defines the offenses in the alternative, and makes it unlawful for a citizen "to depart from or enter * * * the United States unless he bears a valid passport." If the conviction of the appellant had been for a willful departure from the United States without a valid passport we would be confronted with a less difficult problem. A citizen, at an airport or pier, without a passport, can refrain from a violation of the statute by remaining in the country. So doing, the citizen can continue to exercise all of the rights and privileges of citizenship and enjoy the protection afforded to him by constitutions and laws incident to his citizenship. The situation of a citizen, outside the United States or at a port of entry, without a passport, is different. He can resume the enjoyment of a citizen's rights and privileges only by the commission of a criminal offense. The appellant had it within his power to avoid a violation of the prohibition against unlawful entry by refraining from an unlawful departure. But the penalty for an unlawful departure is a fine or imprisonment, or both; and the offense of unlawful departure does not include the offense of an unlawful entry. Neither does an unlawful entry include an unlawful departure although it may be improbable that an entry would be unlawful if the departure was lawful. The two offenses are separate. The appellant was not charged with an unlawful departure.

In Browder v. United States, 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862, and Warszower v. United States, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876, convictions were sustained for using passports secured by false statements where the passports were used for the purpose of establishing identity and citizenship and the consequent right of entry into the United States from abroad. The offense was the use of passports fraudulently secured, and not the act of entering the United States. If citizenship and identity had been established by other means than the passports no offense would have been committed, at least not the offense for which convictions were had. These decisions are not authority for sustaining the conviction of the appellant.

The United States, by 18 U.S.C.A. § 1407, has made it a criminal offense for narcotics addicts and violators to depart from or enter into the United States without registration at a point of entry or a border customs station. This provision has been sustained. Palma v. United States, 5th Cir. 1958, 261 F.2d 93; United States v. Juzwiak, 2nd Cir. 1958, 258 F.2d 844, cert. den. 359 U.S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639; Reyes v. United States, 9th Cir. 958, 258 F.2d 774; United States v. Eramdjian, D.C. S.D.Cal.1957, 155 F.Supp. 914. The offense proscribed by the narcotics act is the failure to register, not the entry as in the case before us. We get but little aid from these decisions in our search for a solution to the problem here posed.

We think it is inherent in the concept of citizenship that the citizen, when absent from the country to which he owes allegiance, has a right to return, again to set foot on its soil. It is not to be wondered that the occasions for declaring this principle have been few. In United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040, it was assumed that to deny entrance of a citizen into the United States was a deprivation of a liberty secured by the Fifth Amendment. In the dissenting opinion in that case it was said that it is no crime for a citizen to come back to his native land. 198 U.S. 253, 269, 25 S.Ct. 644, 49 L.Ed. 1040. In another case the Supreme Court gave recognition to the principle, saying:

"In all the States from the beginning down to the adoption of the Articles of Confederation the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective States, to move at will from place to place therein, and to have free ingress thereto and egress therefrom, with a consequent authority in the States to forbid and punish violations of this fundamen-

tal right." United States v. Wheeler, 254 U.S. 281, 293, 41 S.Ct. 133, 134, 65 L.Ed. 270, Cf. Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394.

We do not think that a citizen, absent from his country, can have his fundamental right to have free ingress thereto subject to a criminal penalty if he does not have a passport. The citizen, culpable though he may have been in leaving his country without a passport which he could not obtain, and subject, as he probably was, to a criminal penalty for departing without a passport, cannot, we think, be required to choose between banishment or expatriation on the one hand or crossing the border on the other hand, being faced with criminal punishment and the loss of some of the rights and privileges of citizenship as a felon. Citizenship, the Supreme Court has recently said, is a most precious right, expressly guaranteed by the Fourteenth Amendment to the Constitution. Kennedy v. Mendoza-Martinez, supra.

We are not unaware of the reluctance with which courts should reach decisions declaring enactments of Congress to be unconstitutional. We realize, though, the duty resting upon the judiciary to protect the citizen in the exercise of the fundamental rights which the fundamental law has conferred upon him. In the performance of that duty, and for the reasons which we have attempted to state, it is our conclusion that the Government cannot say to its citizen, standing beyond its border, that his reentry into the land of his allegiance is a criminal offense; and this we conclude is a sound principle whether or not the citizen has a passport, and however wrongful may have been his conduct in effecting his departure.

The judgment and sentence of the district court will be reversed and the cause will be remanded for the discharge of the appellant.

Reversed and remanded.