Sharon Jeanne **WEISSMAN**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 19974.

United States Court of Appeals
Ninth Circuit.

Feb. 17, 1967.

Peter J. Hughes, of Sheela, O'Laughlin, Hughes & Hunter, San Diego, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Phillip W. Johnson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and ELY, Circuit Judges, and TAVARES, District Judge.

TAVARES, District Judge.

Appellant was convicted by a jury of a violation of 18 U.S.C. § 1407, which provides in material part that:

> "* * * no citizen of the United States who is addicted to or *uses narcotic drugs* * * * shall depart from or enter into * * * the United States, unless such person registers * * * with a customs official * * at a point of entry or a border customs station. * * * such customs official * * * shall issue a certificate to any such person departing from the United States; and such person shall, upon returning to the United States, surrender such certificate to the customs official * * * present at the port of entry or border customs station." (emphasis added)

The jury specifically found, however, that at the time of the commission of the offense, appellant was a *user* of narcotic drugs, but was *not addicted* to narcotic drugs.

Appellant challenges the constitutionality of 18 U.S.C. § 1407, contending:

(1) that the phrase covering one who "uses narcotic drugs" is void for vagueness;

(2) that compliance with the section would contravene the privilege against self-incrimination; and

(3) that the burdens of the section constitute cruel and unusual punishment.

As will appear later, inasmuch as our decision on the first point is dispositive of

the entire case, we do not reach the last two contentions.

The constitutionality of § 1407 has been sustained against similar attack by a defendant "addicted to" narcotic drugs. United States v. Eramdjian, S.D.Cal.1957, 155 F.Supp. 914, cited with approval in Reyes v. United States, 9 Cir. 1958, 258 F.2d 774. See also Palma v. United States, 5 Cir. 1958, 261 F.2d 93. In *Reyes* the statute's constitutionality was unsuccessfully attacked by two defendants, one of whom had been convicted of violation of a narcotic law and the other who admitted, not only that he previously had been convicted for addiction, but also that, on the day of his entry into the United States, he had used narcotics. The effect of the section in its attempted application to a defendant alleged to be a "user" has remained undecided, expressly so in United States v. Eramdjian, supra, wherein the court wrote:

> "Since no defendant in our cases has been charged merely as a 'user,' none are entitled to raise the question of the scope of the words 'uses narcotic drugs' standing alone. We will decide this problem if and when it arises." 155 F. Supp. at 931.

Although the Court has examined numerous precedents for the application of the void-for-vagueness doctrine, including those cited by counsel, precedents do not offer a sure guide to its proper application. See the excellent and extensive note entitled "The Void-for-vagueness Doctrine" 109 U.Pa.L.Rev. 67 (1960). The Supreme Court itself recognized this difficulty in Connally v. General Construction Company (1926), 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322:

> "The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court. In some of the cases the statutes involved were upheld; in others, declared invalid. The precise point of differentiation in some instances is not easy of statement."

But the opinion in the *Connally* case goes on to enunciate the following guidelines:

> " * * * the decisions of the court upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, Hygrade Provision Co. v. Sherman, 266 U.S. 497, 502, 45 S.Ct. 141, 69 L.Ed. 402; Omaechevarria v. State of Idaho, 246 U.S. 343, 348, 38 S. Ct. 323, 62 L.Ed. 763, or a well-settled common law meaning, notwithstanding an element of degree in the definition as to which estimates might differ, Nash v. United States, 229 U.S. 373, 376, 33 S.Ct. 780, 57 L.Ed. 1232; International Harvester Co. of America v. Commonwealth of Kentucky, supra, 234 U.S. 216, p. 223, 34 S.Ct. 853, 58 L.Ed. 1284, or, as broadly stated by Mr. Chief Justice White in United States v. L. Cohen Grocery Co., 255 U.S. 81, 92, 41 S.Ct. 298, 65 L.Ed. 516, 'that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded.' " 269 U.S. at 391–392, 46 S.Ct. at 127.

Applying the foregoing principles to the language of the challenged statute, the conclusion is inevitable that the phrase a "user of narcotic drugs," or the phrase who "uses narcotic drugs" (both being used interchangeably herein), has no definite meaning, either technically or at common law.

It is also apparent that nothing in the text of the statute or in the subject matter with which it deals, provides a standard of any kind for the guidance of individuals seeking to comply with the statute.

No common-law meaning has been suggested for the phrase "user of narcotic drugs" and research has revealed none.

Nor does it appear that the phrase has a technical meaning.[1] The court has also examined various technical books [2] relating to the field of narcotic drugs, including the following which were mentioned by counsel for defendant in his cross-examination of Dr. Salerno:

(1) "Narcotics and Narcotic Addiction," by Drs. Maurer and Vogel;

(2) "Drug Addiction," by Dr. Lawrence Kolb, Assistant Surgeon General (Retired), United States Public Health Service;

(3) "The Drug Addict as a Patient," by Dr. Marie Nyswander; and

(4) "Drug Addiction—Crime or Disease? Interim and Final Reports of the Joint Committee of the American Bar Association and the American Medical Association on Narcotic Drugs."

The concensus of these and other authorities is that drug addiction is a distinct medical entity, but that there is no definite or recognizable category of "drug user."

The California District Court of Appeal reached the same conclusion in substance in the case of McMurtry v. Board of Medical Examiners, cited in note 2, supra. There the court was reviewing an order of the Board of Medical Examiners revoking a physician's license to practice, for his failure to comply with a California statute that required a physician to report his furnishing narcotics to a "habitual user." The court concluded (180 Cal.App.2d p. 770, 4 Cal.Rptr. p. 916):

"The requirement that a physician shall report the giving of a narcotic prescription to a person who frequently uses narcotics gives the physician no reasonable standard for compliance. There is no criterion by which the physician can determine how many instances of narcotics use must transpire before a patient becomes a frequent user."

Although 18 U.S.C. § 1407 by its terms exempts from its provision persons who use narcotic drugs that are furnished, prescribed or administered by a licensed physician to a patient as a result of sickness, accident or injury, the statute does not take into account the vast quantities of narcotic drugs that are legally sold without prescription. The latter include preparations containing: not more than two grains of opium per ounce; or, not more than one-fourth grain of morphine (or any of its salts) per ounce; or, not more than one grain of codeine (or any of its salts) per ounce; or, not more than one-half grain of dihydrocodeine (or any of its salts) per ounce; or, not more than one-fourth grain of ethylmorphine (or any of its salts) per ounce; or preparations in liquid or solid forms containing not more than 2.5 milograms of diphenoxylate and not less than 25 micrograms of atropine sulphate per dosage unit; plus preparations that may include unlimited quantities of: narcotine, papaverine, narceine, cotarnine or nalorphine. See "Drugs subject to Federal Narcotic Laws," General Circular No. 265, Treasury Department, Bureau of Narcotics, January 7, 1965.

In most, if not all, cases in which the question was squarely and necessarily presented and required to be decided, and in which the federal courts have refused to apply the "void-for-vagueness" doc-

---

1. Even Dr. Paul R. Salerno, the only expert called by the prosecution and the only expert who testified in this case, testified on cross-examination that the term "chronic user" is synonymous with "addict," and seemed quite able to define an addict, but was unable to give any intelligible definition of a mere "user" other than an addict. (See R. Vol. 2, pp. 62–68, esp. p. 65).

2. See also other authorities cited in the cases of In re DeLa O (1963), 59 Cal.

2d 128, 378 P.2d 793, 98 A.L.R.2d 705, Cert. Denied DeLa O v. California, 374 U.S. 856, 83 S.Ct. 1927, 10 L.Ed.2d 1076; McMurtry v. State Bd. of Med. Examiners (1960), 180 Cal.App.2d 760, 4 Cal. Rptr. 910; and People v. Victor (1965), 62 Cal.2d 280, 42 Cal.Rptr. 199, 398 P.2d 391; (McMurtry rehearing den. May 27, 1960; petition for hearing by Cal.Sup.Ct. den. July 6, 1960, 180 Cal.App.2d 776, 4 Cal.Rptr. 910).

trine to invalidate a statute, we believe that it will be found that the parties in whose behalf the unconstitutional vagueness was claimed, fell clearly within the terms of the statute, and it was also found expressly or by necessary implication, that there existed a practical possibility of drawing the line by construction at some definite point to exclude others whose inclusion might render the statute void for vagueness.

In the instant case the term "user of narcotics" is unrestricted and general.

If we attempt to ascertain the meaning of the term "user" in a standard dictionary, or in the legion of cases attempting to define that term or other forms of the word "use" in various connections, we find that the term "user of narcotics" can, not unreasonably, be considered to include any of a large number of types of use of a narcotic drug. Even if we undertake, by judicial construction (based on our surmise as to the general intent of Congress or on the context of the statute) [3] to limit the term "user of narcotics" only to those who receive the narcotics internally (that is, within their own bodies) by ingestion through the mouth or by application to the mucous membranes, or by intravenous injection (thereby excluding by construction (a) persons who "use" the drug by merely buying, selling, distributing, or possessing it, and (b) persons who use some form of the drug merely externally, and (c) persons who "use" the drug by administering it to, say, animals: although the statute itself makes no such express

exclusions), the term still can and would ordinarily include:

(1) a person who uses the narcotics in the same way an addict would, but on one or more occasions short [4] of such habitual use as would make him an addict;

(2) one who innocently and quite legally used, on one or more occasions, any of the excepted preparations containing narcotic drugs, above mentioned, which can legally be sold without prescription;

(3) (a) one who unknowingly received the drug internally, on one or more occasions, by accident or mistake (and this is by no means a possibility too remote for consideration, as witness analogous cases recently reported in the press, of individuals who took L.S.D. by mistake without knowing what it was, or took it unknowingly as a result of a practical "joke"), or (b) one to whom, unwillingly, the drug was forcibly administered on one or more occasions and who has no intention of taking any more of the drug, or (c) one who voluntarily took the drug internally on one or more occasions, such as on a prank, and never intends to take it again; or

(4) one who so received the drug on the same day or six months or a year or any other period prior to crossing the border.

We cannot believe that Congress intended all of these classes to be included, nor would it be reasonable to expect the average citizen to have any knowledge, or even a reasonable suspicion, of all of these possibilities of becoming a lawbreaker and unwittingly incurring the penalty

3. Even here the context of the statute does not necessarily indicate an intent by Congress to limit the covered class only to persons who "use" the drug only by receiving it internally, since the *same section* includes among those required to register, not only persons addicted to narcotics, but any person "who has been *convicted* of a *violation* of *any of the narcotic or marijuana laws* of the United States, or of any State thereof, the penalty for which is imprisonment for more than one year." (emphasis added). Obviously persons so convicted include, not just addicts or other persons receiving the drug in-

ternally, but any person who purchases or sells the drug, or merely has it in his possession, or who conspires to violate these laws, and none of them may necessarily be a person who receives the drug internally. Yet persons, *not addicts*, who *buy* or *sell* the *drug for profit*, whether convicted or not, are, perhaps, the class most likely to attempt to smuggle narcotics into the country.

4. If "user" included "addict" the latter term would be surplusage, or if "user" meant only one using the drug so habitually as to be an "addict," then "user" would be surplusage.

of this criminal statute which calls for no special criminal intent.

Yet, to draw the line to exclude any classes that we might surmise were not intended to be included by Congress, would require an intricate and elaborate exposition by the Court based only on those three words, "uses narcotic drugs" with little, if anything, more to guide the Court—not even in the history of the statute, which we have also examined. To thus elaborate upon the scanty words of the statute would be the most inexcusable kind of judicial legislation. Moreover, we have no guide as to the extent of the use required, or the length of time prior to the border crossing that the use would have to occur to be covered by the statute.

To avoid the first difficulty, counsel for the government in the related case of Mason v. United States of America, 9 Cir., 373 F.2d 804 (decided this day on the authority of this case, No. 19,974) suggests the following interpretation of the meaning of the challenged term:

> "Appellee submits that one use is sufficient, unless occurring in the distant past."

Substantially the same contention is made by government counsel in the instant case.

Apart from the patent element of uncertainty inherent in that interpretation, there simply is nothing in the statute to justify its adoption in preference to a variety of other equally plausible interpretations. Moreover, how far past is the "distant" past?

In a valiant attempt to cover this obvious possible defect in the law, the able trial judge in this, the Weissman case, instructed the jury, in part as follows:

> "As you will recall, in most of the cases that you have tried, or in practically all of them, I have instructed you that specific intent is required, that is, the intent to commit the offense. In this case there is an exception. The Government does not have to prove intent to violate the law as far as the defendant is concerned, and it is not necessary for the prosecution to prove knowledge of the accused that the particular act was a violation of law." (R. 104)

\* \* \* \* \* \*

> "Now, a person is a user of narcotic drugs within the meaning of the statute involved in this case if he has used a narcotic drug *within a reasonable period of time prior to the date charged in the Indictment.*" (emphasis added) (R. 106).

The very indefiniteness of this last-quoted paragraph of the instructions reveals the difficulty of attempting to save the statute from being void for vagueness. What is a "reasonable period of time" before the date of the offense—the border crossing? For what purpose and to what end must it be reasonable? An attempt to define this only serves to complicate the difficulty.

Having thus wrestled unsuccessfully with the problem, it is the reluctant opinion and conclusion of this Court that the phrase "user of narcotic drugs" is so vague and indefinite as to constitute a denial of due process within the purview of the *Connally* case, supra, which lays down the rule:

> "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. \* \* \*" 269 U.S. 385, 391, 46 S.Ct. at 127.

Lest the scope of this decision be misconstrued, it should be emphasized that our conclusion is narrowly based on the absence of an adequate definition of one who "uses" narcotic drugs. In this it is not inconsistent with the general

statement in *Eramdjian*, supra, 155 F. Supp. at page 929, quoted with approval in *Reyes*, supra, 258 F.2d at page 783, that:

> "We believe it within the *power* of Congress and not a violation of due process under the Fifth Amendment to require that citizens of the United States who are narcotics users" [we might add: "if that term is adequately defined."] " * * * register before crossing the international boundary." (emphasis added.)

The judgment of conviction is therefore reversed. Upon remand, the District Court will dismiss the indictment.

Reversed and remanded with directions.