UNITED STATES of America,
Appellee,

v.

Thomas J. MANCUSO, Appellant.

No. 358, Docket 33798.

United States Court of Appeals
Second Circuit.

Argued Dec. 8, 1969.

Decided Jan. 20, 1970.

Daniel H. Greenberg, New York City,
for appellant.

Maurice K. Merten, Washington, D. C.
(Edward R. Neaher, U. S. Atty., Brooklyn, N. Y., Robert M. Ornstein, Sp. Atty.,
Jill Wine Volner, Atty., Dept. of Justice,
Washington, D. C., of counsel), for appellee.

Before MOORE and KAUFMAN, Circuit Judges, and RYAN, District
Judge.**

IRVING R. KAUFMAN, Circuit
Judge:

18 U.S.C. § 1407 requires any citizen
convicted of narcotics or marijuana offenses, as well as those who are addicted
to, or "use" narcotic drugs, to register
with customs officials on leaving and
entering the country.[1] The only question
on this appeal is whether one who violated the statute without knowledge or
probability of knowledge of its provisions
may be convicted under it.

On September 20, 1950, Thomas Mancuso was convicted of violating the federal narcotics laws, and sentenced to
three years probation. Almost seventeen

** Of the Southern District of New York,
sitting by designation.

1. § 1407. Border crossings—narcotics addicts and violators

(a) In order * * * to facilitate
more effective control of the international traffic in narcotic drugs, and to
prevent the spread of drug addiction,
no citizen of the United States who is
addicted to or uses narcotic drugs,
* * * or who has been convicted
of violation of any of the narcotic or
marijuana laws of the United States,
or of any State thereof, the penalty
for which is imprisonment for more
than one year, shall depart from or
enter into the United States, unless
such person registers, under such rules
and regulations as may be prescribed
by the Secretary of the Treasury with
a customs official, agent, or employee
at a point of entry or a border customs
station. * * * [S]uch customs official, agent, or employee shall issue a
certificate to any such person departing from the United States; and such
person shall, upon returning to the
United States, surrender such certificate to the customs official, agent, or
employee present at the port of entry
or border customs station.

(b) Whoever violates any of the provisions of this section shall be punished
for each such violation by a fine of
not more than $1000 or imprisonment
for not less than one nor more than
three years, or both.

years later, on January 18, 1967, Mancuso boarded a British Overseas Airways Corporation plane at Kennedy Airport in New York and flew to England. He returned six days later. Neither on his departure or arrival at Kennedy did he fill out the registration forms required by the statute and the applicable regulations.[2] While the prosecution did introduce evidence at trial showing that there were some signs at Kennedy Airport indicating the existence of the registration requirement, the indictment did not charge knowledge, and there were no signs at the BOAC terminal from which Mancuso departed. There can be no argument with the trial judge's conclusion that "[t]he court finds as a fact that the defendant did not have knowledge of the registration requirement in both of the instances as to which he is charged."

Mancuso, after his return to the United States on January 24, 1967, was charged with two counts of violating section 1407; one for leaving the country without registering, and one for entering without registering. He was convicted on both counts and sentenced to one year in jail and $1000 on count 1, and three years on count 2, to run consecutively after count 1. Sentence on count 2 was suspended, with five years probation.

Mancuso urges vigorously that Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), controls. In Lambert the Supreme Court declared unconstitutional a Los Angeles statute requiring all convicted felons to register with the police department within five days after arriving in the city. The Court held that the lack of either notice or a showing of probability of knowledge of the statute, which permitted conviction of those who had no knowledge or reason to know of its provisions, violated fundamental precepts of due process. Prior cases such as Shevlin-Carpenter Co. v. State of Minnesota, 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930 (1910), and United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922), were distinguished as involving licensing of business activity which were unlike the Los Angeles code provisions, for which "circumstances which might move one to inquire as to the necessity of registration are completely lacking." 355 U.S. at 229, 78 S.Ct. at 243. The Court also indicated that there was no commission of acts, or failure to act under circumstances that would make the doer aware of the consequences of his deed; "we deal here with conduct that is wholly passive—mere failure to register." 355 U.S. at 228, 78 S.Ct. at 243.

The government stresses our holding in United States v. Juzwiak, 258 F.2d 844 (2d Cir. 1958), cert. denied, 359 U.S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639 (1958), where we upheld a seaman's conviction under 18 U.S.C. § 1407 for entering and leaving the country without registering. This Court's decision in Juzwiak rested on two alternative grounds; the first, that Lambert was not controlling because it involved "nonfeasance" as opposed to Juzwiak's "misfeasance" in accepting employment on a ship traveling to Europe. The second, citing Lambert, explained that "there was a showing of the probability that the defendant [Juzwiak] had knowledge of his duty to register." 258 F.2d at 847. Later, in United States v. Jones, 368 F.2d 795

---

2. 19 C.F.R. § 23.9a provides that on entering and leaving the country, narcotics violators (both convicted and users) shall fill out form 3231, "Registration Certificate of Narcotic Addict or Violator." Mancuso claims that since he did not fill out a form on departing, filling out one on arrival would violate his Fifth Amendment privilege against self-incrimination, because it would reveal his departure violation. Leary v. United States, 395

U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). Because of our disposition on the issue of knowledge, we find it unnecessary to reach that contention.

558

(2d Cir. 1966), we expressly refused to decide whether or not knowledge of the statute, or reasonable probability of such knowledge, was a necessary element for conviction under section 1407. We also did not take issue with Judge Port in the District Court for charging that knowledge was required (despite *Juzwiak*). 368 F.2d at 798 n. 4. Since it would be sheer sophistry to attempt to distinguish *Lambert* by describing flying to London (Mancuso) as "misfeasance," while characterizing flying to Los Angeles (which *Lambert* would cover) as "nonfeasance," we regard the second ground in *Juzwiak* (that there was a showing of probability of knowledge on Juzwiak's part) as the holding in that case. Since the district court specifically found that there was "no knowledge" of the statute, we hold that Mancuso did not violate 18 U.S.C.

§ 1407.[3] Our decision to so construe the statute is supported by a long line of Supreme Court precedents that urge construction of federal statutes, if possible, so as to avoid the question of their constitutionality.[4]

Our determination to so interpret section 1407 is underscored by both precedent and practicality. The Supreme Court was faced with interpreting a criminal statute lacking of a specific requirement of wilfulness in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). It considered the aim of the act (one punishing conversion of government property), and the common-law background in order to conclude that intent, although not specifically mentioned, must be read into it.

On practical, purposive grounds, it is difficult to understand how elimination

3. In *Juzwiak*, the defendant was a merchant seaman, and there was evidence to show that the signs were posted conspicuously in the hiring office, on the ship where he worked, and in the union hall that he frequented on numerous occasions. The court specifically stated that the " 'probability of knowledge' " requirement of *Lambert* was met on the facts of the case.

The court in *Juzwiak* indulged in a specific inquiry into the facts surrounding Juzwiak's personal knowledge of the statute. It appears to have taken the same course we follow here, and inquired into the circumstances that would raise an inference of actual knowledge. Indeed, since the concurring opinion seems to treat probability of knowledge as "an exclusively factual question dependent on the facts of each case," we are unable to understand the source for its disagreement with our treatment of the requirement of probability of knowledge. We need not, and expressly do not, proffer any opinion on the wisdom or constitutionality of a criminal statute designed to give generally reasonable notice, and then punish those who negligently failed to observe or learn its terms. Cf. Lambert v. California, 355 U.S. 225, 227, 229–230, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). See Hart, The Aims of the Criminal Law, 23 Law & Contemp.Prob. 401, 417ff. (1958).

4. See, e. g., Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932):

"When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."

See also United States v. Seeger, 380 U.S. 163, 188, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965) (Douglas, J., concurring).

Palma v. United States, 261 F.2d 93 (5th Cir. 1958), cited by the government as holding that the statute is constitutional and does not require knowledge, appears to take that position as dictum, since it seems to accept the contention that "by failing to claim any constitutional privilege to which he may have been entitled at the time he was about to leave or enter the United States, appellant cannot now be heard to complain that he has been deprived thereof." 261 F.2d at 94. See also Ketchum v. United States, 269 F.Supp. 796 (S.D. N.Y.1967). The only other Circuit court decision urged by the government, Reyes v. United States, 258 F.2d 774 (9th Cir. 1958), does appear contra the position taken here. See also United States v. Eramdjian, 155 F.Supp. 914 (S.D.Cal. 1957). However, Weissman v. United States, 373 F.2d 799 (9th Cir. 1966) overruled so much of *Reyes* and *Eramdjian* as held the "user" portion of the statute constitutional.

of the requirement of knowledge would have furthered the Congressional aim to make detection of illegal narcotics importation easier. See United States v. Juzwiak, 258 F.2d 844, 848 (2d Cir.) (Clark, J., concurring), cert. denied, 359 U.S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639 (1958). The primary purpose of law, and the criminal law in particular, is to conform conduct to the norms expressed in that law. When there is no knowledge of the law's provisions, and no reasonable probability that knowledge might be obtained, no useful end is served by prosecuting the "violators." Since they could not know better, we can hardly expect that they should have been deterred. Similarly, it is difficult to justify application of criminal punishment on other traditional grounds such as retribution, rehabilitation or disablement. Without knowledge, the moral force of retribution is entirely spent; we do not rehabilitate conduct that is by hypothesis not faulty; and there is little to recommend incarcerating those who would obey the law if only they knew of its existence. See Hart, The Aims of the Criminal Law, 23 Law & Contemp. Prob., at 422–25.[5] We emphasize these points not to argue that a court may simply rewrite a statute that it does not like, but rather to illustrate how self-frustrating the Congressional enactment would have been had it carried the interpretation urged by the government.

And finally, we are presented with that rare instance in which overturning a criminal conviction will in all probability lead to improved enforcement of the underlying act. The hallmark of this case is sloppiness on the part of those charged with responsibility for enforcing the statute. The total effort to inform those likely to be affected by the provisions of section 1407 seems to have consisted of a few signs posted in crew entrances at airports, in a few places near customs stations, and at other odd locations ill-designed to bring them to public notice of travelers generally. As the trial judge summarized the evidence before him:

"Incredible as it may seem, the Government in all the years since the enactment of the Narcotics Control Act of 1956 [citation omitted], has devised no better way to implement it than to tack up the aforesaid warning notices in various places (not including the departure areas for travelers at the John F. Kennedy Airport). It is obvious that a simple question and warning on applications for passports would accomplish the purpose perfectly * * *."

Thus a simple notice provided with each passport application, or a printed form given to narcotics violators on their conviction, warning them of the requirement to register, would provide both the notice and knowledge necessary to sustain a criminal conviction, and to ensure that the aim of the statute would be fulfilled.

The judgment of the District Court is reversed and the indictment is dismissed.

MOORE, Circuit Judge (concurring):

I concur in the result. Specifically I would not read § 1407 more broadly than as interpreted in Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d

5. Common law cases generally applied the maxim *ignorantia legis neminem excusat* ("ignorance of the law excuses no one") when mistake or ignorance of the existence of a criminal prohibition was urged. The sound reasoning behind such a conclusion was that the criminal law expressed general communal moral standards, and ignorance of their existence reflected in any case either recklessness or dangerousness to the community. See Hall, Ignorance and Mistake in Criminal Law, 33 Ind.L.J. 1 (1957). The maxim, and its rationale, are severely undercut when applied to ignorance of the facts constituting an offense, see Commonwealth v. Mixer, 207 Mass. 141, 93 N.E. 249, 31 L.R.A., N.S., 467 (1910), or ignorance of a *malum prohibitum* and little known statutory command that can be found only by going to the statute books—or to a sign in some part of a large and bustling airport.

228 (1957) and United States v. Juzwiak, 258 F.2d 844 (2d Cir. 1958), *cert. denied* 359 U.S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639 (1958). As I interpret these cases they stand for the necessity of showing knowledge *or probability of knowledge.* To add, by judicial decision, the requirement of knowledge of the registration requirement is in my opinion to usurp the congressional function. Probability of knowledge is an exclusively factual question dependent upon the facts of each case. Therefore, I would not indulge in generalizations as to how our decisions can lead to improved law enforcement, the wisdom of prosecuting violators or the rehabilitation of transgressors. In short we do not have to declare here when ignorance of the law is an excuse. Nor do we have to list the ways in which notice might be given to warrant a factual conclusion of probability of knowledge. However, I am in complete accord with the very practical suggestions of Judges Kaufman and Dillin as to how the issue even of probability can easily be avoided.